IN THE MATTER OF ANTHONY F. DE MARCO,
AN ATTORNEY AT LAW.

Argued June 8, 23, 1971, February 23, 1972—Decided April 24, 1972.

*Mr. John G. Dluhy* argued the cause for the Passaic County Ethics Committee.

*Mr. Anthony F. De Marco, pro se.*

PER CURIAM. In the summer of 1965 respondent, Anthony F. De Marco, represented a client by the name of Hart in connection with the sale of the latter's home. From the proceeds of sale received at that time the sum of $10,000 was retained by respondent. This was done with Hart's consent,

although the parties later disagreed as to whether the retention constituted a loan, as respondent contends, or a trust arrangement, as Hart later insisted. Actually a written agreement was executed at the time under the terms of which the sum was to have been repaid with interest in the form of monthly payments over a five year period. In fact no regular payments were made, but rather Hart presented himself at respondent's office at sporadic and irregular intervals asking for and receiving small sums by way of cash or check and presenting bills he wished to have paid. Hart admittedly was drinking heavily and apparently was fearful that he might squander the entire sum if it remained in his own hands. The money represented substantially his entire life savings. The requested payments were made, except when respondent was temporarily without funds. Many payments took the form of cash for which no receipts were taken and a number of times checks given to Hart or in payment of his debts were dishonored for lack of funds in respondent's checking accounts. The purchaser of Hart's home had given a $1,500 purchase money mortgage which was thereafter paid in installments, the payments being made to respondent, who insists the money was turned over to Hart in cash; the latter maintains he received only a small part of it. No receipts were produced.

Meanwhile Hart had retained respondent to collect a debt of $3,000 owed by one From. It was agreed that respondent might retain 50% of anything he collected and that Hart would not be otherwise obligated to reimburse him for his services. The claim was duly reduced to judgment. Upon From needing to refinance the mortgage on his home and finding that the judgment stood in his way, he agreed to give a second mortgage in the amount then due, i. e., $3,580, in consideration of the judgment being cancelled. This was done, the new mortgage, dated October 11, 1967, running jointly in favor of Hart and respondent as mortgagees. On February 3, 1970, when there was due on the mortgage slightly more than $4,000, From made a payment of $2,000

and all parties entered into an agreement extending the time of payment with respect to the unpaid balance to February 15, 1972. Respondent kept the $2,000 that was paid and later assigned the mortgage to Hart. The latter disclaims any knowledge of the cash payment made by From until a much later date.

In the spring of 1970 Hart, having become dissatisfied with respondents handling of his affairs, retained an attorney to find out out how much respondent owed him and to collect the balance. As a result of this attorney's efforts default judgments were entered in favor of Hart against respondent on November 23, 1970 in the amount of $4,778.46 with respect to the first matter discussed above and in the sum of $2,796.31 with respect to the second. The judgments have not been paid.

On April 15, 1970 Hart also filed a complaint against respondent with the Passaic County Ethics Committee. A hearing was scheduled for October 19, 1970, but respondent failed to appear. He did, however, appear at an adjourned hearing on December 17, 1970 where testimony was taken supporting the statements set forth above. In reply, respondent took the position that his retention of the $10,000 had constituted a loan, that although he had not repaid the whole, yet he had repaid much more than Hart conceded, that the $1,500 paid in satisfaction of the purchase money mortgage had in fact been disbursed to Hart in full in the form of cash and that Hart knew of and approved his retention of the $2,000 payment from From.

In due course the Ethics Committee filed a presentment with this court, *R.* 1:20–4(h), charging that respondent had violated Canons 10 and 11 of the Canons of Professional Ethics[1] in that he (a) took advantage of the confidence reposed in him by his client for his personal benefit, (b) de-

---

[1] The Canons of Professional Ethics were, as of September 13, 1971, superseded by the Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association (as amended by the Supreme Court).

layed and failed to account for trust funds coming into his possession from and for his client, and (c) commingled his own funds with those belonging to his client. It further found that the repeated issuance of checks against insufficient funds violated Canons 29 and 32 and that failure to segregate his own funds from those of his client and to keep adequate records of the disposition of his client's money constituted a breach of Canon 11 and a violation of *R.* 1:21-6. The latter Rule was held also to have been breached by respondent's failure to maintain a trustee account.

■ We have carefully reviewed the testimony taken before the Ethics Committee as well as the exhibits that were received in evidence and agree with the Committee's conclusions. It is apparent from the record that Hart is a man of modest intellectual attainments, who suffered to some extent from alcoholism and who reposed complete confidence in his attorney, to whose care he entrusted practically all of his wordly assets. It also seems clear — as is implicit in the Committee's findings — that Hart did not understand and probably did not read the agreements he signed. He was completely dominated by De Marco. Clearly respondent took advantage of his client. Even were it to be believed that the retention of the $10,000 was a loan, this in itself under the circumstances here presented would have been improper. An attorney-client relationship existed with all that that implies; De Marco dominated Hart who trusted him completely; the latter had no assets other than this money. He was alone in the world, uninformed in business matters and suffering from addiction to alcohol. An unsecured loan to his attorney under such circumstances was patently improper. This is not to say that the transfer was a loan. We agree with the conclusion of the Ethics Committee that a trust was created and of course the funds were not treated as trust funds must be treated. They were commingled with respondent's own funds, they were not available when required and to this day have not been fully repaid.

██ The absence of receipts for payments made in cash and the repeated issuance of checks drawn against insufficient funds tell their own story. Such deplorable financial practices on the part of a member of the bar are not to be tolerated. Respondent sought to excuse these financial irregularities by declaring that a former secretary had embezzled funds from his bank accounts. We remanded the matter to the Ethics Committee to give respondent an opportunity to develop this point by further proofs. The evidence of the former secretary touching her alleged embezzlement was not credited by the Committee and we find no reason to disagree.

The retention for his own use of the $2,000 paid by From was inexcusable. Under the arrangement upon which the parties had agreed. De Marco was entitled at most to one-half this amount. The Committee concluded that Hart had not been seasonably made aware of this payment and with this we agree.

Respondent is presently under suspension. This suspension shall continue for a period of three years from the date of imposition and until the further order of this court. If and when application for reinstatement is submitted, it is to be accompanied by clear and unequivocal proofs that full restitution of the amounts still owing to Hart was made promptly after the filing of this opinion.

*For suspension for three years*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*Opposed*—None.