## IN THE MATTER OF GEORGE AVERY BECKMANN, ATTORNEY-AT-LAW.

Argued March 20, 1979—Decided April 26, 1979.

*Ms. Colette A. Coolbaugh* argued the cause for the Disciplinary Review Board.

*Mr. George A. Beckmann* argued the cause *pro se.*

PER CURIAM. Respondent, George A. Beckmann, was admitted to the bar of this state in 1966. In April, 1975, he was indicted by a Bergen County Grand Jury for embezzling funds held in trust for a client, a violation of *N. J. S. A.*

2A:102–2. On May 30, 1975 the Superior Court, Chancery Division, appointed a custodial receiver to take possession of respondent's property, pursuant to *R.* 1:28–8(c). See *Trustees, Clients' Security Fund v. Beckmann,* 143 *N. J. Super.* 548, 551 (Ch. 1976). Thereupon this Court temporarily suspended respondent from the practice of law by order dated June 13, 1975.

In November, 1976 Beckmann pleaded guilty to the charge of embezzlement. He was sentenced to 360 days in Bergen County jail and served 57 days of that custodial term. Based upon this conviction and two other instances of misappropriation of clients' funds the Central Ethics Unit filed a complaint with the Bergen County Ethics Committee. At the subsequent hearing on these charges Beckmann admitted the underlying facts upon which the criminal conviction was based and further acknowledged the misappropriation of clients' funds in the two other cited instances. The amounts involved in these defalcations represented part of the total of $19,038.99 paid to various claimants by the Clients' Security Fund. Of this amount $5,013.50 was repaid to the Fund under an order of distribution directed by the Chancery Division to the custodial receiver. See *Trustees, Clients' Security Fund v. Beckmann, supra,* 143 *N. J. Super.* at 558–59.

The local Committee filed a presentment finding that respondent had engaged in improper and unethical conduct in three separate matters. Upon review and after a hearing the Disciplinary Review Board, which agreed that this finding was "fully supported by clear and convincing evidence," decided that Beckmann's conduct constituted a violation of DR1–102(A)(3), (5) and (6), generally prohibiting conduct which is illegal, prejudicial to the administration of justice, or which adversely reflects on one's ability to practice law. The Board recommended disbarment.

According to respondent his difficulties sprang from a well-motivated if entirely misguided effort to salvage his father's failing real estate firm, Geo. H. Beckmann, Inc. of

Teaneck. In addition to maintaining an office for the private practice of law Beckmann, a licensed real estate broker, also worked on a part-time basis with his father and brother in the real estate business. When respondent's father retired in 1968, the sons took over the real estate firm which at that time was burdened with some $200,000 in debts. In 1971 respondent's brother was forced to retire for reasons of health. Inasmuch as all bank debts had been paid off with only private borrowing remaining, including an open mortgage of $50,000, Beckmann chose to continue the real estate business. As the money market became more constricted in the early '70s, the business did not prosper. Respondent was forced to take out second and third mortgages on Geo. H. Beckmann, Inc. with his private residence as collateral.

In 1974 the holder of the private open mortgage died. His estate sought payment of the balance due. Efforts at further institutional and private financing were, not surprisingly, unsuccessful. A projected sale of the real estate business office suddenly collapsed. When foreclosure of the open mortgage was threatened, respondent in desperation diverted moneys from his attorney's trust account to the real estate business to pay accumulated principal and interest. Shortly thereafter the defalcations were discovered and the ethics complaints followed. So, eventually, did foreclosure of the mortgage, seizure of respondent's remaining assets, suspension from the bar and, finally, incarceration.

In the year following his release from jail respondent's efforts to obtain employment met with only indifferent success. Finally in April, 1978, Beckmann became employed by Chicago Title Insurance Company as a title reader, a position he still holds. His employer is fully aware of the circumstances recited herein, and officers of the company have written the Court in respondent's behalf.

■ Accepting this version of the pertinent facts as accurate, we nevertheless must view respondent's dereliction as most serious. Indeed, there are few more egregious acts of professional misconduct of which an attorney can be guilty

than misappropriation of a client's funds held in trust. While disbarment might be called for as a general rule in the face of so serious an offense, see, *e. g., In re Ryan,* 60 *N. J.* 378 (1972), we have not invariably meted out that ultimate discipline in every instance of misappropriation, given persuasive evidence of mitigating circumstances. See *e. g., In re Stout,* 75 *N. J.* 321 (1978) ; *In re Mahoney,* 78 *N. J.* 248 (1978).

In the matter before us we are not unimpressed with respondent's unvarnished perception of his misdeed and his efforts at rehabilitation. His predicament was brought on not by greed or riotous living or scandalous personal habits but rather by singularly inept handling of a family business venture. While Beckmann suggests that he was temporarily insane at the time of his defalcations, we treat that defense as expressive of no more than his distraught condition reflected in an inexcusable response to the extreme financial pressures closing in on him. He has, by loss of his family and by the disgrace of conviction and incarceration, paid a heavy price for his misconduct. His contrition is apparent.

While we recognize that the result we fashion here does not have the blessing of precedent, we nevertheless determine that under the circumstances both the interests of adequate protection for society and the need for discipline of the bar will be vindicated by an order suspending respondent (whose temporary suspension is now of almost four years' duration) indefinitely and until further order of this Court, with the further provision that application for reinstatement will be entertained only when accompanied by a certification of the Trustees of the Clients' Security Fund that respondent has made full reimbursement of whatever balance remains unreimbursed to the Fund. See *In re DeMarco,* 60 *N. J.* 380, 384 (1972). This serves to implement our view of the serious nature of the offense, while at the same time permitting respondent to demonstrate in material

form his rehabilitation by making whole the agency which has borne the financial burden of his misconduct.

So ordered.

*For suspension*—Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, CLIFFORD, SCHREIBER and HANDLER—6.