**In re the Disciplinary Matter Involving Paul MANN, II, Respondent.**

No. S. 4671.

Supreme Court of Alaska.

June 11, 1993.

Stephen J. Van Goor, Alaska Bar Ass'n, Anchorage, William G. Royce, Anchorage, for respondent.

## *OPINION*

MOORE, Chief Justice.

Paul Mann, II, the respondent in this proceeding, and the Alaska Bar Association's Discipline Counsel entered into a stipulation for discipline by consent. The Bar's Disciplinary Board accepted the stipulation and recommended that we adopt it. Were we to do so, Mann would have been suspended from the practice of law for three years from August 15, 1991 *nunc pro tunc.* Instead, we believe Mann should be suspended from the practice of law for three years commencing January 15, 1993, the date of our order rejecting the Bar's stipulation and remanding the case for further proceedings pursuant to Bar Rule 22(e).[1] We reach this decision because we believe the stipulation provides inadequate discipline for the egregious offense of misappropriating client funds.

## I. BACKGROUND FACTS

Mann was admitted to the Alaska Bar in 1977. He practiced for one year as an associate with a Sitka attorney then established a sole practitioner office in 1978. He maintained his Sitka practice until the events at issue in this proceeding.

In early September 1990, Mann misapplied $2,001 which had been obtained on a referral collection for the benefit of a New York law firm. He used the money to pay past due mortgage payments on his home.

On September 19, 1990, Mann drove to the Sitka police station. He had a pistol in his car, and contemplated suicide. Mann entered the station and reported the misappropriation to the Sitka police. He insisted on being arrested at that time; however,

the police were concerned with Mann's mental state. They summoned a psychologist, who concluded that Mann was acutely suicidal. Thereafter, Mann was hospitalized in the Sitka Community Hospital, where he remained under medical and psychological care for several days.

Upon his release, Mann directed his attorneys to contact the Alaska Bar Association to report his crime and determine the appropriate steps with respect to his practice. On September 28, Mann and the Alaska Bar Association executed an agreement for the supervised closing of his practice under the trusteeship of another Sitka attorney.

Mann returned the misappropriated funds on September 28. On October 4 and 5, Mann voluntarily placed a notice in the Sitka Sentinel newspaper informing the local community of the misappropriation and its probable consequences. He informed the public of the transition agreement and apologized for any harm he may have caused.

Mann's self-reporting resulted in a criminal conviction for misapplication of property, a Class C felony. Mann served 60 days in jail, and was required to comply with other conditions during a three year probationary term. One condition of the probation was that Mann not practice law during the three year term.

## II. APPROPRIATE SANCTION

 In determining sanctions, we need not accept the Board's recommendation, and may exercise our own independent judgment. Alaska Bar R. 22(r); *Burrell v. Disciplinary Bd.,* 777 P.2d 1140, 1143 (Alaska 1989). "We determine the appropriate sanction to impose for attorney misconduct on a case-by-case basis." *Burrell,* 777 P.2d at 1143.

---

1. In pertinent part this order reads:
 1. The stipulation is REJECTED, and this matter is REMANDED to the Alaska Bar Association for proceedings under Bar Rule 22(e) with instructions that a sanction of less than a suspension from the practice of law for three years beginning January 15, 1993, will not be accepted.

2. An opinion will follow.
 . . . .
 [Burke and Matthews, Justices, concur in the rejection of the stipulation but dissent as to the sanction recommended; they would disbar.]

In *In re Buckalew*, 731 P.2d 48, 51–52 (Alaska 1986), we adopted the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards) and methodology as guidelines for determining sanctions for lawyer misconduct in Alaska. The ABA Standards use a four-pronged test to assess the appropriate sanction.

(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)

(2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?) and

(4) Are there any aggravating or mitigating circumstances?

*Id.* at 52 (quoting Standards for Imposing Lawyer Sanctions, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:805–06).

We use a three-step analysis to address these questions.

The initial step requires that we answer the first three "prongs" of the ABA test set forth above. Next, we must look to the ABA Standards to discern what sanction is recommended for the "type" of misconduct found in our initial inquiry. After determining the recommended sanction, we must ascertain whether any aggravating or mitigating circumstances exist which warrant increasing or decreasing the otherwise appropriate sanction.

*Id.; see also In re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

A. Step One: Ethical Duties Violated, Mental State and Injury or Potential Injury

Because, like *Buckalew*, this case involves a stipulation for discipline by consent pursuant to Alaska Bar Rule 22(h), the first three prongs of the ABA test have essentially been answered for us. *See*

*Buckalew*, 731 P.2d at 52. Thus, extensive analysis is not required here.

■ Under the first prong, the ethical duties violated, bar counsel argues that Mann violated two ethical duties. The first is ABA Standard § 4.1, Failure to Preserve the Client's Property, ABA/BNA 01:815, which is a violation of the duty Mann owed to his client. *See id.* at 52 & n. 15. The second is ABA Standard § 5.1, Failure to Maintain Personal Integrity, ABA/BNA 01:827, which is a duty Mann owed to the public. *See id.* (citing ABA Standards, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:827). These ABA Standards correspond to the following professional canons in the Code of Professional Responsibility: DR 9–102, Preserving Identity of Funds and Property of a Client; and DR 1–102, Misconduct.[2] We agree that these are the duties Mann violated.

■ The second prong, the lawyer's mental state, also is easy to discern. Mann was convicted of misapplication of property in violation of AS 11.46.620. His conviction is conclusive proof of all the elements of the crime for which he was convicted. *Schuler*, 818 P.2d at 141. One element of the crime of misapplication of property is the scienter requirement that the crime be committed "knowingly."[3]

[A] person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist. . . .

---

2. Specifically, Mann violated DR 1–102(A)(1), DR 1–102(A)(3), and DR 1–102(A)(4). These canons prohibit a lawyer from violating a disciplinary rule, engaging in illegal conduct involving moral turpitude, and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. DR 1–102(A)(1), (3), (4).

3. AS 11.46.620(a) reads:

A person commits the crime of misapplication of property if the person knowingly misapplies

AS 11.81.900(a)(2). The "knowingly" scienter requirement is in accord with the "knowledge" mental state under the ABA Standards.[4] *Buckalew*, 731 P.2d at 53 n. 19.

The third prong of the ABA test is the injury or potential injury. The ABA Standards define "injury" and "potential injury" as follows:

"Injury" is harm to a client, the public, the legal system, or the profession which results from the lawyer's misconduct. The level of injury can range from "serious" injury to "little or no" injury; a reference to "injury" alone indicates any level of injury greater than "little or no" injury.

. . . .

"Potential injury" is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of a lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct.

Definitions, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:807.

Bar counsel argues that Mann's client suffered injury by Mann's failure to preserve its money, and that the public suffered injury by Mann's failure to maintain his personal integrity. We agree. *See* ABA Standards Theoretical Framework, Laws. Man. on Prof. Conduct (ABA/BNA)

at 01:806; *see also Buckalew*, 731 P.2d at 52–53.

### B. Step Two: ABA Recommended Sanction

██ After answering the first three prongs of the ABA test, we look to the ABA Standards to determine the recommended sanction. Two applicable ABA Standards exist for the type of misconduct in which Mann engaged. Under both, disbarment generally is the appropriate sanction.[5] ABA Standards §§ 4.11, 5.11(a), Laws.Man. on Prof. Conduct (ABA/BNA) at 01:815, 01:827. Our analysis does not end here, however. Under the ABA Standards, we also must inquire whether any mitigating circumstances warrant a reduced sanction. "Because disbarment is the most severe sanction we can impose, we need not consider any aggravating factors in order to consider whether [the] sanction should be increased. However, the presence of aggravating factors is relevant here because of the 'neutralizing' effect they may have upon any mitigating factors." *Buckalew*, 731 P.2d at 54 n. 24.

### C. Step Three: Aggravating and Mitigating Factors

Both aggravating[6] and mitigating[7] factors exist. In aggravation, the following

---

property that has been entrusted to that person as a fiduciary or that is property of the government or a financial institution.

**4.** The ABA Standards define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Definitions, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:807.

**5.** Disbarment is generally appropriate both "when a lawyer knowingly converts client property and causes injury or potential injury to a client," ABA Standard § 4.11, Laws.Man. on Prof. Conduct (ABA/BNA) at 01:815, and when "a lawyer engages in serious criminal conduct a necessary element of which includes ... misappropriation, or theft...." *Id.* § 5.11(a) at 01:827.

**6.** Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.
*In re West*, 805 P.2d 351, 358 n. 16 (Alaska 1991) (quoting former ABA Standard § 9.22, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:841–42). In February 1992, when amending its standards for sanctions, *see* ABA Standards, Preface, Laws.Man. on Prof. Conduct (ABA/BNA) at 01:801, the ABA added a new aggravating circumstance: "(k) illegal conduct, including that involving the use of controlled substances." ABA Standard § 9.22, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:838–39 (June 17, 1992).

**7.** Mitigating factors include:
(a) absence of a prior disciplinary record;

factors are present: prior disciplinary offenses [8] and substantial experience in the practice of law.[9] The following mitigating factors exist: personal or emotional problems;[10] timely good faith effort to make restitution or to rectify consequences of misconduct;[11] full and free disclosure to disciplinary board or cooperative attitude toward proceedings;[12] interim rehabilitation;[13] imposition of other penalties or sanctions;[14] remorse;[15] and remoteness of prior offense.[16]

There is no "magic formula" to determine which or how many mitigating circumstances justify the reduction of an otherwise appropriate sanction. Each case presents different circumstances which must be weighed against the nature and gravity of the lawyer's misconduct.

*Buckalew,* 731 P.2d at 54.

"[T]he severity of [this] misconduct cannot be overstated. '[T]here are few more egregious acts of professional misconduct ... than the misappropriation of client's funds held in trust.' " *Id.* at 55 (quoting *In re Beckmann,* 79 N.J. 402, 400 A.2d 792, 793 (1979)). However, we believe the mitigating factors weigh heavily enough to re-

---

(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical or mental disability or impairment;
(i) delay in disciplinary proceedings;
(j) interim rehabilitation;
(k) imposition of other penalties or sanctions;
(*l*) remorse;
(m) remoteness of prior offenses.

*West,* 805 P.2d at 358–59 n. 18 (quoting former ABA Standard § 9.32, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:842). In February 1992, when amending its standards for sanctions, *see* ABA Standards, Preface, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:801, the ABA inserted a new provision, elaborating on mental disability itself as a mitigating circumstance:

(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA Standard § 9.32, Laws. Man. on Prof. Conduct (ABA/BNA) at 01:839–40 (June 17, 1992). Other mitigating factors have not changed. *See id.*

**8.** The disciplinary records of the Bar Association reveal that in 1984 Mann received a written private admonition for neglect of a client matter (DR 6–101(A)(3)) and failure to carry out a contract of employment for that client (DR 7–101(A)(2)).

**9.** Mann was admitted to the practice of law in Alaska in 1977.

**10.** A psychologist determined that Mann was acutely suicidal when he turned himself in to the Sitka police two weeks after misappropriating his client's funds.

**11.** Mann restored the client's funds on September 28, within a month of the misappropriation. In addition, Mann fully cooperated with the Sitka attorney who supervised the closing of Mann's practice.

**12.** Mann voluntarily turned himself in to the Sitka police and the Alaska Bar Association before anyone discovered his misappropriation. Without his self-disclosure, Mann's crime easily could have gone undetected.

**13.** Mann was required to participate in alcohol/drug rehabilitation and psychological/psychiatric counseling programs in conjunction with his criminal probation. Additionally, Mann successfully closed his practice under the supervision of another Sitka attorney.

**14.** Mann spent 60 days in jail and was required to complete 100 hours of community service for his criminal conviction. He was suspended from the practice of law for his three year criminal probationary period, which began June 17, 1991.

**15.** Mann's self-disclosure to the police is the most telling evidence of his remorse. His notice in the Sitka Sentinel and cooperation with authorities provide further evidence to support this factor.

**16.** Mann's prior offense, which was much less serious, occurred in 1984.

duce Mann's sanction from disbarment to a three year suspension from January 15, 1993, the date of our order.

The most significant mitigating factor is Mann's voluntary disclosure. He freely came forward within a month after misapplying his client's funds, before anyone knew of his offense. Nothing suggests that anyone would have discovered his offense but for his disclosure. Although we do not condone Mann's misappropriation of funds, we commend his voluntary disclosure and genuine regret. We encourage others similarly situated also to freely disclose their wrongdoings.

## III. CONCLUSION

For the reasons stated above, we decline to impose the sanction consented to by Mann and recommended by the Disciplinary Board. As we are required to do under these circumstances by Alaska Bar Rule 22(h), we remand this case to the Alaska Bar Association for further proceedings. Pending such further proceedings, Mann shall remain suspended from the practice of law in accordance with Alaska Bar Rule 26(d).[17]

MATTHEWS, Justice, joined by BURKE, Justice, dissenting.

Because the misappropriation of a client's funds is not only stealing but a gross breach of trust, I think disbarment should almost always be imposed in such cases. "[O]nly the most compelling mitigating circumstances" justify sanctions more lenient than disbarment where a lawyer converts client funds for his own use. Commentary, *ABA Standards for Imposing Lawyer Sanctions*, § 4.11.

Mann committed his offense when he was severely depressed, a condition brought about at least in part by financial and family problems. Unfortunately, depression is a common malady. A review of the digests leads one to conclude that most attorneys who take their clients' money are depressed. *See, e.g.,* 4 Pacific Digest 2d, Attorney & Client, Key Number 58 (West 1990 & Supp.1992). In my view depression

should not be regarded as a mitigating circumstance of sufficient strength to reduce the sanction for misappropriation from disbarment to suspension.

The most unique mitigating circumstance which is present in this case is the fact that Mann turned himself in a few weeks after his offense, at a time when no one knew he had committed it. While this is certainly commendable, it is nonetheless after the fact conduct which does not serve to explain or excuse the offense. To me, the dominant fact in this case is that Mann stole money belonging to his clients. The fact that he acted responsibly afterwards does not warrant a reduction in the usual sanction. Thus I would order Mann disbarred.

---

**17.** After publishing our January 15, 1993 order, we received from the Bar Association both a request to reconsider and, in the event we declined to do so, a revised stipulation whereby Mann and the Bar agreed to our recommended sanction. We decline to reconsider the order, but accept the revised stipulation.