[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PRESENTMENT OF ATTORNEY FOR MISCONDUCT
I.
On December 5, 1996, the Statewide Grievance Committee filed this presentment, pursuant to Practice Book § 31(a),[1]
alleging that the respondent William A. Wechsler has been guilty of misconduct due to, inter alia, improperly misusing clients' funds on numerous occasions.
A hearing was held on this matter on April 30, 1997 at which time the parties agreed to waive the filing of an answer and the introduction of any testimony. In lieu thereof, the parties filed a Stipulation of Facts containing 94 paragraphs and covering three main issues. Applicable to all issues is the statement that the respondent "was the supervising attorney responsible for financial matters at the firm in Hartford, Connecticut and signed all of the firm checks referenced in this Stipulation." CT Page 5455
The first issue concerns the methods in which the respondent's firm utilized monies received on behalf of clients. For example, in the case of Ms. Cindy Goodrich, a settlement sum of $40,000 was received on July 22, 1991 but while checks to medical providers were dated August 5, 1991, they were actually not sent until September 12, 1991. The firm did not issue a check to Ms. Goodrich until August 5, 1991. In another case, the firm received settlement proceeds on behalf of Rolanda Rivera on September 3, 1991 in the amount of $70,000 but her medical providers were not paid until December 6, 1991, some three months after receipt. For client William Oettle, $11,500 was deposited on December 3, 1991 and his medical providers and lien holders were not paid until February 11, 1992. Similarly, for client Valentin Dulay, $6,727.50 was deposited on October 16, 1991 but he was not paid his monies until December 4, 1991. Finally, for client James Lucey, his settlement proceeds were deposited on September 30, 1991 but he did not receive his portion until November 4, 1991.
The parties have also stipulated that Mr. Wechsler billed a client for the cost of a deposition and then did not pay the court reporter. The client, Mr. Clark, was deposed on February 27, 1991 and Mr. Wechsler's firm was not billed until April 6, 1991. Mr. Clark paid a firm invoice on August 30, 1991 which included a charge for the cost of the deposition. On May 15, 1992, however, the reporter had still not been paid and Mr. Clark paid the reporter directly. He sought reimbursement for the firm, and Mr. Wechsler reimbursed him on July 24, 1992.
The Committee maintains that these actions violate Rules 1.3 and 1.15(b) and 8.4(c) of the Rules of Professional Conduct.[2]
The second issue, which is really part and parcel of the first issue, is that by his manipulation of the clients' funds, the actual fund balance never equalled the amount that should properly have been in the account. For instance, on December 3, 1991, $11,500 was deposited as a result of a settlement for William Oettle. He was not paid his share of $5,398.80 until December 20, 1991. Yet on December 19, 1991, the bank balance contained only $1,858.50. Further, after his check cleared, the balance was $1,455.75 while $2,242.40 was owed to Mr. Oettle's medical providers (whom were not paid until February 1992). In connection with client Shawn Batten, $2,000 was deposited in the CT Page 5456 clients' fund account on June 24, 1991, $20,000 was deposited on June 14, 1991 and $77,592.93 was deposited on June 19, 1991. After deducting attorneys fees, $65,061.99 should have been in the account yet on July 17, 1991 with the client due his funds, only $13,514.24 was in the trust account. The client was also still due the funds as of October 24, 1991.
For client Andrew Carter, $82,850 was deposited on December 12, 1990, yet on December 21, 1990 only $53,431.06 was in the fund; on February 25, 1991, only $13,364.10 was in the fund; on May 9, 1991, only $7,763.21 was in the fund. He received his money on July 12, 1991. For client Valentin Dulay, his check of $6,727.50 was deposited on October 16, 1991 and while he received his money on December 4, 1991, there was a negative balance in the fund on November 26, 1991.
For client James Lucey, his check of $40,000 was deposited on October 1, 1991 but on October 8, 1991 the fund had only $10,761.86. For client Cindy Goodrich, while her funds of $40,000 were deposited on July 22, 1991, on August 5, 1991 prior to her being paid ($21,311.63 on August 5, 1991), the balance was only $16,614.25. Again, for client Rolanda Rivera, while her settlement figure of $70,000 was deposited on August 29, 1991, and her medical providers were not paid their $13,770.20 until December 6, 1991 and as of September 30, 1991 the fund balance was $210.66. Finally, with client Sherwin-Williams, the sum of $10,637.68 was deposited on February 21, 1991 and the funds were distributed in February 1992; yet, several times in between, the fund balance was below $7,763.21. The Committee maintains that this conduct violates Rules 1.15(a) and (b) and 8.4(c) of the Rules of Professional Conduct.
The third issue concerns both the continuing communication with a former client, rather than with his new counsel, and the retention of funds received on behalf of the client. The Committee maintains that those actions violated Rules 1.15(b) and 4.2 of the Rules of Professional Conduct.[3]
 II A.
An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His CT Page 5457 admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession.
(Citation omitted; internal quotation marks omitted.) Doe v.Statewide Grievance Committee, 240 Conn. 671, 684-85, ___ A.2d ___ (1997) citing Massameno v. Statewide Grievance Committee,234 Conn. 539, 554-55, 663 A.2d 317 (1995).
 B.
It is clear that the acts, as stipulated to, evidence a misuse of the respondent's clients' funds. There was a practice of abuse which surely violated the Disciplinary Rules. The funds of all these clients were in no way safeguarded or protected; while the clients (and providers) eventually received their monies, the respondent's use of these monies constituted a violation of Rules 1.3, 1.15(a) and (b) and 8.4(c).
The respondent did not testify at the hearing, but, through his attorney, did acknowledge that there were violations of the Rules. He admitted that as chief officer of the firm, he was responsible and that he did not pay sufficient attention to details. In defense of his failure to "attend to the details," he advised the court that the firm had expanded to five offices, including one in Prague and one in Budapest and that two attorneys had left the firm on December 5, 1991. Additionally, he noted the firm had suffered a major downturn resulting in personal and financial loss. He suggested that a publication in the Hartford Courant which attributed the decision in another grievance matter with another attorney to the respondent (as the result of the information being mistakenly supplied by the Office of the Statewide Bar Counsel) caused much unwarranted publicity. The Statewide Bar Counsel did acknowledge the mistake and a correction notice appeared in the newspaper the following day. CT Page 5458
The respondent concluded by noting that the impact of this process and the attendant notoriety has caused sufficient punishment, and thus the likelihood of future violations was very
 C.
These arguments were, of course, presented in mitigation of any potential penalty. While not adopted by the judges of this state, the American Bar Association has adopted Standards for Imposing Lawyer Sanctions which utilize, inter alia, a system for comparing aggravating and mitigating factors. Section 3.0 therein stated "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." InStatewide Grievance Committee v. Shluger, supra, 230 Conn. 673, f. 10, the court noted this methodology and ultimately reviewed and upheld the trial court's decision based on that system. Id., 679-680. The standards at Section 9.0 state that "after misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose. The section 9.22 aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
 (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim; CT Page 5459
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
 (k) illegal conduct, including that involving the use of controlled substances.
The section 9.32 mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
 (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
 (e) full and free disclosure to disciplinary boards or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
 (i) mental disability or chemical dependency including alcoholism or drug abuse when;
 (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
 (2) the chemical dependency or mental disability caused the misconduct;
 (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
 (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; CT Page 5460
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.
Through the Stipulation, this court has evidence of a pattern of misconduct, multiple offenses and a selfish motive. That is balanced with an absence of a prior disciplinary record, full and free disclosure to disciplinary boards, and a showing of remorse. As noted, the clients and providers did receive their money, albeit not on time. Nevertheless, the potential injury to the clients was surely great. Our Disciplinary Rules and the attorney client relationship is based upon upholding, preserving, and maintaining that trust that clients bestow on their lawyers. The ability of the profession to function is dependent in no small part on this concept of trust. Notwithstanding any acknowledgement of wrongdoing or adverse publicity the respondent may have suffered, this clearly does not excuse the repeated violations of this basic fiduciary duty and, of course, the Disciplinary Rules.
Courts have always viewed the misuse of clients' funds as warranting very severe sanctions. As noted by one court:
 [w]hatever the need may be for the lawyer's handing of client's money, the client permits it because he trusts the lawyer. . . [T]here are few more egregious acts of professional misconduct of which an attorney can be guilty than the misappropriation of a client's funds held in trust.
 In Matter of Wilson, 409 A.2d 1153, 1154-55 (1979) citing InMatter of Beckman, 400 A.2d 792, 793 (1979)]. See also, Carterv. Ross, 461 A.2d 675, 676 (R.I. 1983) ("[w]e are convinced that continuing public confidence in the judicial system and the bar as a whole requires that the strictest discipline be imposed in misappropriation cases"). This court is also in agreement. Accordingly, it is the order of this court, that the respondent be suspended, pursuant to Practice Book § 31(a), for a period of five years. Reinstatement shall be subject to the provisions of Practice Book § 36.
Marshall K. Berger, Jr., J. CT Page 5461