[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to P.B. § 2-47 the petitioner, Statewide Grievance Committee (hereinafter the "Committee") brought this presentment alleging multiple acts of misconduct against the respondent attorney covering the period, 1993 to the present.
A hearing was held on July 19, 1999 at which time the respondent appeared pro se, elected not to file an answer to the petition and participated fully in the proceeding, including giving testimony on his own behalf.
 A.
The court finds that the Committee has proved the allegations of its petition by clear and convincing evidence. StatewideGrievance Committee v. Presnick, 215 Conn. 162, 171 (1990). The petition sets forth seven specific events of misconduct, some of which include more than a single act. The first event (1) concerned complaint #93-0516 in which the respondent was found by the committee to have accepted a retainer for the purpose of instituting a he never commenced. In addition, the committee found that notwithstanding his promise to refund the retainer to the complainant by November, 1993 he did so only sometime after the grievance hearing was concluded on June 1, 1994. It is CT Page 13311 relevant to the subsequent acts of misconduct alleged that the respondent attempted to shift blame for this to an associate in his office who left the office without commencing the action. The respondent did not attend the hearing. The respondent was reprimanded by the Committee.
The next incident (2) arose the same year (Complaint #93-0363). In this case the Committee received several overdraft notices regarding the respondent's checking account. The Committee accepted the respondent's explanation. The respondent promised to correct the situation. The Committee took no further action. Some months later the Committee received another overdraft notification concerning a $1,000 check written to one, Robert Swift. The significance of this is, having been alerted to these overdrafts in August, the respondent failed to take steps to safeguard his clients' funds account against further overdrafts. The Committee found that the respondent had violated rule 1.15 and P. B. § 27A(a)(b). The respondent was reprimanded.
The third event (3) alleged is the respondent's failure to register with the Committee since 1997 in violation of P. B. § 2-27 (d) and (e). At the Committee-ordered hearing the respondent readily admitted to this act of omission but attributed it to his mistaken entrustment of responsibility to his then secretary whom he expected would register him.
Next, (4) the Committee charges the respondent with failure to institute a personal injury law suit on behalf of one John Rivera, despite having entered into a contingency fee agreement to do so. The respondent failed to appear at his grievance hearing on the Rivera complaint despite being subpoenaed to the hearing. The respondent's testimony on this point at trial was that he appeared for the hearing two hours late. The court deems this to constitute (5) a failure to appear. The respondent offered no acceptable excuse.
The evidence demonstrated that the respondent attempted to induce Rivera to withdraw his grievance complaint by offering him $3,300, payable at the rate of $500 per week in return for Rivera's written release of claims. There is no evidence whether the respondent paid any or all of that sum. The Committee found this action to be in violation of Rule 8.4(4) of the rules, to wit: conduct prejudicial to the administration of justice. The court agrees with this finding. CT Page 13312
The Committee further found that the respondent ignored Rivera's reasonable requests for information, allowed the Statute of Limitations to run and failed to act with diligence and competence, all in violation of Rules 1.1, 1.3., 1.4, 27A(d)(e), 8.1(d) and 8.4(d). The respondent admitted to having committed the specific acts found.
The sixth (6) and seventh (7) charges of misconduct involved misappropriation of funds. The first such incident involved a Pasadena Atkins whom the respondent represented in a personal injury action. On July 13, 1995 the respondent provided Dr. Eric Garver, Miss Atkins's treating physician, with a letter of protection with respect to the doctor's fees and charges. On April 18, 1996 the respondent and Miss Atkins signed a settlement statement pursuant to which the respondent undertook to remit to Dr. Garver his fees and charges. As of the date of trial Mrs. Atkins's account was still unpaid. During this time the respondent made many promises that he would satisfy the account. Likewise, when Miss Atkins wrote him on September 19, 1997 threatening to file a complaint with the Committee he never responded or returned her telephone calls.
In an undated response to the Atkins grievance complaint the respondent submitted a written explanation in which he undertook to "make arrangements with Dr. Garver to pay his bill". He also said he would do "everything possible to rectify the situation and make sure it never happens again". Not only did the respondent not pay Dr. Garver but as will be seen, infra, it did happen again, only with a different client.
When the respondent testified before the Committee under oath he said that he had made payments to Dr. Garver on behalf of Miss Atkins when he had not. The respondent admitted before this court that that testimony was false. The respondent now states that he did not realize that the statement was false at the time it was made because he had believed that his secretary had been making the payments. The court is of the belief that if the falsehood was unintentional it clearly was made with reckless disregard for the truth. Even in the face of this proceeding the respondent has not paid the amount promised to Dr. Garver and continues to withhold payment to this date.
The second case of misappropriation also occurred in 1996. The respondent settled a case for one Robert Fogle for $8,000 CT Page 13313 and signed a letter of protection in favor of Bridgeport Physical Therapy and Sports Medicine, Inc. In the January 30, 1996 settlement statement which the respondent presented to Mr. Fogle he acknowledged the need to pay Bridgeport Physical Therapy and Sports medicine the sum of $1,920 and Dr. Katz, an orthopedist, $575. Charlotte Toth the officer manager for that company testified that $1,920 has never been paid and that respondent never called her office to offer payment. The court finds this testimony to be credible and therefore accepts it. As in the Atkins case the respondent promised to "rectify the situation and make sure it never happens again".
The court finds that at the grievance hearing the respondent lied under oath that he had made arrangements to pay Mr. Fogle's medical bills. He also lied that he had been paying the bills when he in fact he had not. He also lied that he had a receipt for each payment he had made when he had none.
The respondent endeavors to alleviate the seriousness of these matters by shifting blame to his then secretary whom he claims embezzled money from him. The respondent did not deny or refute any of the evidence. The court finds that these acts of misappropriation and the two separate incidents of lying under oath before the Committee constitute violations of rule 8.4(3) (4). The court further finds that the respondent has made no attempt to rectify, ameliorate or atone for any of the conduct which underlies these acts. The respondent though acknowledging wrongfulness, showed no remorse and offered no apologies. Instead, he deflected responsibility to his secretary rather than hold himself accountable.
 B
"Attorney disciplinary proceedings" are for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them'". Statewide GrievanceCommittee v. Shluger, 230 Conn. 668, 674 (1994), quoting Ex Parte Wall, 107 U.S. 265, 288 (1883); Statewide Grievance Committee v.Rozbicki, 211 Conn. 232, 238 (1989). "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he CT Page 13314 has become or is unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. In re: Peck 88 Conn. 447, 450
(1914). Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected it from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession . . . Statewide Grievance Committee v. Botwick,226 Conn. 299, 307 (1993). (Internal quotation marks omitted).Massameno v. Statewide Grievance Committee, 234 Conn. 539. 554-55 (1995), citing Statewide Grievance Committee v. Shulger, supra 674-75".
To aid in the task of "evaluating [a] defendant's character, integrity and fitness to practice law in order to determine the sanction to impose against him"; Statewide Grievance Committee v.Shulger, supra, 230 Conn. 677; Connecticut courts have been guided by the American Bar Association's Standards For Imposing Lawyer's Sanctions (Standards) [13] id., 673 n. 10. The Standards provide that," "after a finding of lawyer misconduct, the court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; (d) the existence of aggravating or mitigating factors'" Id.
Several different duties are implicated by the respondent's conduct. The first duty is that of honesty with the client and to the public. This duty ranks as the most serious and solemn of all duties under which an attorney lives. This duty was flagrantly violated through the respondent's repeated misrepresentations and falsehoods under oath, by his continued I failure to make good on his commitments and by his repeated misappropriation of funds that did not belong to him. The other duties which the respondent violated flow from the duty of honesty and integrity.
The second factor listed by our Supreme Court, that of the respondent's mental state, is not an issue here for there has never been any claim nor is there any evidence of any mental condition which may have contributed to the respondent's behavior. The third factor involves direct, actual injury to the two persons whom the respondent has failed to pay and the clients whose funds he misappropriated. His conduct involving Fogle, Atkins and Rivera seriously undermines public confidence in the CT Page 13315 legal profession and by extension, in the judicial system that the public relies on to protect it from such conduct.
As for the final factor, there are no mitigating factors. The respondent's attempt to shift blame to a secretary does nothing more than highlight his gross inattentiveness to the business phase of his law practice and to the uncontrolled delegation of responsibility to her without adequate supervision or safeguards. Moreover, the respondent shows no remorse, and indeed seems to take his misconduct lightly in view of his statement to the court that a 90 day suspension is appropriate. On the other hand, there are aggravating factors that continue to prevail. They are (i) the respondent's untrue testimony before the Committee given on two occasions; (ii) his long unfulfilled promises of corrective action; (iii) his total lack of effort to satisfy his obligations to his debtors; (iv) his continual failure to register as required by P. B. 2-27(d)(e); (v) his failure to appear at his July 3, 1997 grievance hearing.
In summary, the respondent has shown a pattern of misconduct over a period of four years (1994-1998). Regrettably, the respondent shows no signs of reversing that destructive pattern.
 C
This court agrees with the Supreme Court of New Jersey that "there are few more egregious acts of professional misconduct of which an attorney can be guilty than the misappropriation of client's funds held in trust. In re: Beckman 400 A.2d 792, 793
(1979, N.J). In this case, the fact that the clients (Fogle and Atkins) would not have received the funds in question for themselves is immaterial. These funds belong to them and they were to have been used to pay their debts. The respondent has clearly benefitted [benefited] financially from these defalcations.
The respondent's request for a maximum 90 day suspension is wholly inadequate and inappropriate. The respondent's transgressions strike at the very core of his character and are predictive of his future behavior. Even a lengthier suspension of definite durations presumes rehabilitation at the end of the suspension period. There is absolutely no basis for a belief that the respondent will alter his value system or modify his behavior patterns in the short term. It is not only vital that the court protect the public from exposure to this kind of conduct but it is also important that a sufficient period of time elapse to CT Page 13316 permit the respondent to requalify himself in the rules of professional behavior which he obviously satisfied at the time of his admission to the bar in 1991.
Accordingly, it is the order of this court that pursuant to P.B. § 2-44 the respondent be and he hereby is disbarred. Further, it is ordered that the respondent not be permitted to apply for readmission for a period of five years. Such readmission shall be governed by the provisions of P.B. 2-53.
THE COURT
Mottolese, Judge