STATEWIDE GRIEVANCE COMMITTEE *v.*
ROBERT J. SHLUGER
(14880)

CALLAHAN, BORDEN, BERDON, KATZ and PALMER, Js.

Argued June 3—decision released August 9, 1994

*John R. Willard,* with whom, on the brief, was *Robert J. Shluger,* for the appellant (defendant).

*Daniel B. Horwitch,* statewide bar counsel, for the appellee (plaintiff).

PALMER, J. The defendant, Robert J. Shluger, an attorney, appeals from the judgment of the trial court suspending him from the practice of law for a period of three years.[1] The defendant claims that the trial court improperly: (1) considered certain criminal misconduct by the defendant not charged in the presentment; (2) considered prior ethical misconduct by the defendant for which he had been disciplined; and (3) concluded that the defendant's federal felony conviction warranted his suspension from the practice of law for three years. We affirm the judgment of the trial court.

The facts are undisputed. After the defendant's graduation from law school and admission to the bar

---

[1] The defendant appealed from the judgment of the Superior Court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

of this state in 1981, he joined the law offices of Michael A. Peck,[2] where he was employed until 1990. While employed by Peck, the defendant filed personal federal income tax returns for the calendar years 1986 and 1988 wherein he intentionally understated his taxable income.[3]

On May 25, 1993, the defendant was charged in the United States District Court for the District of Connecticut with one felony count of willfully making and subscribing to a false income tax return for the calendar year 1988[4] in violation of 26 U.S.C. § 7206 (1).[5] The defendant entered a plea of guilty to that offense, and acknowledged that he had reported $22,782 in taxable income for 1988, knowing that he had taxable income for that year in the amount of $76,398. On August 23, 1993, he was sentenced to a two year period of probation and ordered to pay any sums due and owing to the Internal Revenue Service.[6]

On October 28, 1993, the plaintiff, the statewide grievance committee, filed a presentment and petition for interim suspension against the defendant in the

[2] That firm later became Peck, Shluger, Coombs and O'Neill.

[3] During the period of his employment with the law offices of Michael A. Peck and the law firm of Peck, Shluger, Coombs and O'Neill, the defendant was paid a cash salary, with nothing withheld for the Federal Insurance Contributions Act or federal income tax purposes.

[4] The defendant was not charged with filing a false income tax return for the calendar year 1986.

[5] Title 26 of the United States Code, § 7206 (1) provides in relevant part: "Any person who . . . [w]illfully makes and subscribes any [tax] return . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . or imprisoned not more than 3 years, or both, together with the costs of prosecution."

[6] The defendant was also required to pay the costs of prosecution and a mandatory special assessment of $50.

Superior Court, pursuant to Practice Book § 28B.1.[7] The presentment alleged that the defendant had been convicted of subscribing to a false tax return for the calendar year 1988 in violation of 26 U.S.C. § 7206 (1), a felony, and that he had been sentenced to a term of probation of two years. On December 7, 1993, the trial court conducted a hearing on the presentment

[7] Practice Book § 28B.1 provides in relevant part: "[SUSPENSION, DISBARMENT AND UNAUTHORIZED PRACTICE OF LAW]——DISCIPLINE OF ATTORNEYS CONVICTED OF A FELONY IN ANOTHER JURISDICTION

"(a) An attorney shall send to the statewide bar counsel written notice of his conviction in any court of the United States, or the District of Columbia, or of any state, territory, commonwealth or possession of the United States of a serious crime as hereinafter defined within ten days of the entry of the judgment of conviction. That written notice shall be sent by certified mail, return receipt requested.

"(b) The term 'conviction' as used herein refers to the disposition of any charge of a serious crime as hereinafter defined resulting from either a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of any appeal.

"(c) The term 'serious crime' as used herein shall mean any felony as defined in the jurisdiction in which the attorney was convicted. . . .

"(e) Upon receipt of the written notice of conviction the statewide bar counsel shall obtain a certified copy of the attorney's judgment of conviction, which certified copy shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney on the basis of the conviction. Upon receipt of the certified copy of the judgment of conviction, the statewide bar counsel shall file a presentment against the attorney with the superior court for the judicial district wherein the attorney maintains an office for the practice of law in this state . . . . The sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to be imposed, provided that the presentment proceeding instituted will not be brought to hearing until all appeals from the conviction are concluded unless the attorney requests that the matter not be deferred. The statewide bar counsel shall also apply to the court for an order of immediate interim suspension, which application shall contain the certified copy of the judgment of conviction. The court may in its discretion enter an order immediately suspending the attorney pending final disposition of a disciplinary proceeding predicated upon the judgment of conviction. Thereafter, upon good cause shown, the court may, in the interest of justice, set aside or modify the interim suspension. Whenever the court enters an order suspending or disbarring an attorney pursuant to this section, the court may appoint a trustee, pursuant to Sec. 46B, to protect the client's and the attorney's interests."

and petition. At the hearing, the defendant testified on direct examination that he had twice been reprimanded, once by a local grievance committee and once by the plaintiff,[8] for improper communications with parties whom the defendant knew to be represented by other counsel.[9] The defendant further testified on direct examination that his filing of a false income tax return for the calendar year 1988 had been an isolated instance of the use of poor judgment. Prior to the hearing, however, the defendant had filed with the court an affidavit in which he stated that he had "commit[ted] the act of falsely reporting [his] actual income for the years *1986* and 1988." (Emphasis added.) On cross-examination, the defendant acknowledged that although he had only been charged with filing a false tax return for 1988, he had also filed a false return for 1986.

The trial court concluded that a "reprimand [of the defendant] would not adequately protect the public and the administration of justice from an attorney who is unlikely properly to discharge his professional duties to clients, the public, the legal system, and the legal profession. [The defendant] has been reprimanded twice previously. He is convicted of a serious crime and admits to a like violation for which he was not charged. The [defendant] is accordingly suspended from the prac-

[8] Although the exact dates of the defendant's reprimands are not contained in the record, the conduct that resulted in the issuance of the reprimands occurred in 1985 and 1987.

[9] The second of the defendant's two reprimands resulted from conduct in violation of rule 4.2 of the Rules of Professional Conduct, entitled "Communication with person represented by counsel," which provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The defendant had earlier been reprimanded for a similar violation of the Code of Professional Responsibility, the predecessor to the Rules of Professional Conduct.

tice of law for a period of three years commencing on February 15, 1994."[10]

I

The defendant first claims that the trial court, in formulating its judgment, improperly considered his filing of a false 1986 federal income tax return. Specifically, he argues that the court's consideration of his filing of a false 1986 return deprived him of his right to fair notice of the charges against him because the presentment contained no reference to that conduct. We disagree.

[10] The trial court was guided, in part, by the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards) in determining the appropriate discipline. The Standards, originally promulgated in 1986, have not formally been adopted by the judges of this state. Both parties, however, relied on the Standards in their presentations to the trial court and neither party objected to their consideration by the court.

The Standards provide in relevant part: "3.0 Generally. In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. . . . 9.1 Generally. After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose. 9.2 Aggravation. 9.21 Definition. Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed. 9.22 Factors which may be considered in aggravation. Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process . . . . 9.3 Mitigation. 9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. 9.32 Factors which may be considered in mitigation. Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation . . . (j) interim rehabilitation in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses."

We begin our analysis of the defendant's claim with a review of the well established principles that govern disciplinary actions against attorneys.[11] Attorney disciplinary proceedings "are for the purpose of preserving the courts from the official ministration of persons unfit to practise in them." *Ex parte Wall,* 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883); *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 238, 558 A.2d 986 (1989). An attorney "as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted

---

[11] The professional rights and obligations of attorneys practicing within Connecticut are governed by the Rules of Professional Conduct, adopted by the judges of the Superior Court in 1986. *Matza* v. *Matza,* 226 Conn. 166, 175, 627 A.2d 414 (1993). Rule 8.4 of the Rules of Professional Conduct, which enumerates proscribed attorney conduct, provides in relevant part: "MISCONDUCT

"It is professional misconduct for a lawyer to: (a) Violate or attempt to violate the Rules of Professional Conduct . . .

"(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

In addition, the comment to rule 8.4, which serves as a guide for compliance with that rule, provides in relevant part: "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. . . . Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Rules of Professional Conduct 8.4, comment.

with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited." *In re Peck,* 88 Conn. 447, 450, 91 A. 274 (1914). Therefore, "[i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Botwick,* 226 Conn. 299, 307, 627 A.2d 901 (1993).

Because a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law. *In re Ruffalo,* 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117, reh. denied, 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874, modified on other grounds, 392 U.S. 919, 88 S. Ct. 2257, 20 L. Ed. 2d 1380 (1968); *Statewide Grievance Committee* v. *Botwick,* supra, 226 Conn. 306. Accordingly, "[b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights 'in some substantial manner.'" *Statewide Grievance Committee* v. *Botwick,* supra, 308, quoting *Grievance Committee* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941). With respect to the required notice, the presentment must "be sufficiently intelligible and informing to advise the court of the matter complained of, and the attorney of the accusation or accusations made against him, to the end that . . . the latter may prepare to meet the charges against him . . . ." *In re Peck,* supra, 88 Conn. 453; *Statewide Grievance Committee* v. *Botwick,* supra, 310. Conduct not charged in a presentment, therefore, may not provide the ground for the suspension of an attorney. *Statewide Grievance Committee* v. *Botwick,* supra, 311.

Contrary to the claim of the defendant, the presentment need not have included any reference to the defendant's filing of a false 1986 tax return. The presentment filed against the defendant, in full compliance with Practice Book § 28B.1, properly set forth the ground for the disciplinary action against him, namely, his conviction for filing a false federal income tax return for the calendar year 1988. Because the sole ground for disciplinary action initiated under § 28B.1 is an attorney's criminal *conviction*,[12] nothing more than the defendant's federal tax conviction was required to have been included in the presentment. The trial court, however, was also free to consider other evidence relevant to the defendant's character, integrity and professional standing; see General Statutes § 51-94;[13] so that it could determine what sanction to impose against the defendant in light of his felony conviction. *Statewide Grievance Committee* v. *Whitney,* 227 Conn. 829, 837–38 n.13, 633 A.2d 296 (1993); *Grievance Committee* v. *Sinn,* supra, 128 Conn. 426. Because the trial court reasonably concluded that the defendant's filing of a false tax return for 1986 was relevant to those issues, it properly considered that conduct.

The defendant cannot complain that he had not received adequate notice of the issue of his false 1986 tax return, because the defendant himself had brought that fact to the attention of the trial court in his prehearing submission.[14] Moreover, the defendant's

---

[12] See footnote 7.

[13] General Statutes § 51-94 provides: "EVIDENCE IN PROCEEDINGS TO SUSPEND, DISPLACE OR REMOVE ATTORNEYS-AT-LAW. In any proceeding for the suspension, displacement or removal of an attorney-at-law or to investigate the character, integrity or professional standing of such attorney, evidence tending to show the general character, reputation and professional standing of such attorney shall be admissible."

[14] The defendant argues that because he raised the issue of his false 1986 tax return solely for the purpose of demonstrating his remorse, the trial court could only have considered that fact as a mitigating, rather than an

repeated characterization of his felony tax convic-
tion as having resulted from "one isolated act of very
poor judgment" prompted the plaintiff's fair cross-
examination of the defendant concerning his filing of
a false 1986 return, which the defendant again acknowl-
edged. Finally, in view of the fact that the defendant
was given a full and fair opportunity to address the trial
court's concerns about the false 1986 return, both at
the hearing and again in his posttrial brief, the defend-
ant has failed to demonstrate that he was unfairly prej-
udiced by the trial court's consideration of the 1986
return.[15] See *Statewide Grievance Committee* v. *Roz-
bicki,* 219 Conn. 473, 484, 595 A.2d 819 (1991), cert.
denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d
416 (1992).

II

The defendant next claims that the trial court improp-
erly concluded that the defendant's prior ethical
misconduct was relevant to its determination of an
appropriate sanction. We do not agree.

Because the defendant had been properly presented
for discipline on the basis of his federal felony convic-
tion, the trial court was responsible for evaluating the
defendant's character, integrity and fitness to practice
law in order to determine the sanction to impose
against him. Evidence of the defendant's prior ethical
misconduct, because of its relevance to those issues,
was admissible at the disciplinary proceeding. *Statewide*

aggravating, factor. The defendant, however, has cited no authority for
that proposition. Moreover, the trial court, which had broad discretion to
evaluate the evidence properly before it, reasonably concluded that the
defendant's filing of a false 1986 tax return constituted an aggravating
factor warranting an increase in the degree of discipline to be imposed.

[15] The defendant did not seek a continuance of the hearing for the pur-
pose of introducing additional evidence about the false 1986 tax return.
Indeed, the defendant has failed to articulate how he would have defended
the disciplinary action differently had the presentment specifically referred
to the false 1986 tax return.

*Grievance Committee* v. *Whitney,* supra, 227 Conn. 837–38 n.13; see General Statutes § 51-94.[16]

The trial court acted within its discretion in concluding that the defendant's prior reprimands bore a reasonable relation to the issues before it. Although the defendant claimed that the reprimands were merely the result of unintentional lapses and, as such, were not sufficiently serious to warrant the trial court's consideration, the court reasonably could have concluded that the defendant's repeated failure to comport himself as required by the rules governing professional conduct demonstrated a knowing disregard of his ethical responsibilities. Moreover, the trial court could have reasonably concluded that because the defendant had committed these ethical improprieties in close temporal proximity to the criminal tax offenses, the defendant's criminal and ethical breaches were not, as he contended, isolated occurrences resulting from unrelated lapses in judgment but, instead, a series of violations that together constituted a pattern of misconduct. The trial court reasonably concluded, therefore, that the defendant's disciplinary history warranted consideration as an aggravating factor.

### III

The defendant further contends that the trial court abused its discretion in concluding that he was unfit to practice law and in suspending him from the practice of law for three years. We disagree.

"The trial court had inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it. *Grievance Committee* v. *Sinn,* [supra, 128 Conn. 422]; *Grievance Committee* v. *Broder,* 112 Conn. 263, 266,

---

[16] See footnote 13.

152 A. 292 (1930); *Grievance Committee* v. *Ennis,* 84 Conn. 594, 602, 80 A.2d 767 (1911); *In re Durant,* 80 Conn. 140, 147–48, 67 A. 497 (1907).'' *In re Weissman,* 203 Conn. 380, 384, 524 A.2d 1141 (1987). ''Long ago, we stated that 'courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice.' *In re Peck,* [supra, 88 Conn. 457]; see also *Statewide Grievance Committee* v. *Rozbicki,* [supra, 219 Conn. 483].'' *Statewide Grievance Committee* v. *Botwick,* supra, 226 Conn. 307–308. However, ''[a]lthough our review of grievance proceedings is restricted, we recognize the seriousness of the interests that we must safeguard. We have a continuing duty 'to make it entirely clear that the standards of conduct, nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . .' '' *In re Application of Pagano,* 207 Conn. 336, 345, 541 A.2d 104 (1988), quoting *Grievance Committee* v. *Broder,* supra, 112 Conn. 278.

The trial court's memorandum of decision reflects the court's careful consideration of the facts relevant to its determination of an appropriate sanction. With respect to mitigating circumstances, the trial court acknowledged that the defendant had presented evidence ''which certainly redounds to his credit as a citizen and member of the bar,'' including pro bono, charitable and bar association activities. The trial court also concluded that the defendant had enjoyed a good reputation in the community and at the bar, and that he appeared to be remorseful for his illegal conduct. Finally, the trial court considered as a mitigating circumstance the fact that the defendant, since his gradu-

ation from law school, had practiced in "an unsavory work environment created by [his] employer."

The trial court also reviewed the facts that warranted consideration as aggravating circumstances. The defendant had been convicted of filing a materially false federal income tax return for 1988, a serious federal felony punishable by a term of imprisonment of up to three years. This offense was not an isolated occurrence, the defendant having also filed a false tax return for 1986. The defendant did not dispute the fact that he had engaged in this conduct knowingly and willfully, with the specific intent to defraud the Internal Revenue Service. Furthermore, the defendant's substantial understatement of his taxable income for both 1986 and 1988 had been motivated solely by greed. Finally, the defendant had been reprimanded for professional misconduct on two separate occasions, each involving ethical improprieties. The trial court concluded that the defendant's repeated criminal and ethical violations constituted a pattern of misconduct for which simply another reprimand would not have been sufficient.

On the basis of the serious and repeated nature of the defendant's misconduct, the trial court could reasonably have concluded that he was unfit to practice law and, consequently, that a sanction more severe than a reprimand was necessary. Indeed, the conduct that gave rise to the defendant's federal felony conviction occurred after he had already received at least one reprimand, a sanction that, regrettably, proved insufficient to deter the defendant from future wrongdoing. Moreover, because the crime of subscribing to a false tax return for the purpose of evading taxes is an offense that involves fraud, deceit and dishonesty, the defendant's conviction for that offense bears directly on his fitness to practice law. See Rules of Professional Con-

duct 8.4 and comment thereto.[17] The evidence supports the trial court's determination, therefore, that the defendant's criminal and ethical misconduct indicated a deficiency of character and integrity incompatible with the high ethical standards required of attorneys who practice before the courts of this state.[18]

Finally, we are not persuaded that the trial court acted unreasonably in imposing a three year suspension of the defendant's license to practice law. Although a three year suspension will undoubtedly result in hardship to the defendant, of paramount importance in attorney disciplinary matters is "the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." *Grievance Committee* v. *Broder,* supra, 112 Conn. 265. The record before the trial court supports its conclusion that the imposition of a suspension of significant duration was necessary in this case to accomplish that end. Accordingly, we conclude that the trial court acted within its discretion in suspending the defendant from the practice of law for three years.

The judgment is affirmed.

In this opinion CALLAHAN, BORDEN and KATZ, Js., concurred.

---

[17] The fact that the defendant's criminal misconduct did not directly involve the discharge of his professional duties does not convince us otherwise, especially in light of the nature of his criminal conduct, for "[p]rofessional honesty and honor are not to be expected as the accompaniment of dishonesty and dishonor in other relations. So it is that we, in common with other courts, hold . . . that misconduct, indicative of moral unfitness for the profession, whether it be professional or nonprofessional, justifies dismissal as well as exclusion from the bar." *In re Peck,* supra, 88 Conn. 450–51.

[18] As we stated many years ago, "[a]s important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy." *In re Peck,* supra, 88 Conn. 450.

BERDON, J., dissenting. I disagree with the majority because I believe that the trial court abused its discretion in suspending the defendant, Robert Shluger, from the practice of law for three years. Although it was within the discretion of the court to discipline the defendant by suspending him from the practice of law, I believe that the suspension is excessive.

The conduct that precipitated the disciplinary proceedings was the defendant's filing of a false federal income tax return for the year 1988. Although the defendant had also filed a false tax return for the year 1986, a fact that the trial court took into consideration, the federal government only prosecuted him for the false 1988 tax return. The defendant pleaded guilty to the felony offense and was sentenced to two years probation. He was also ordered to pay all sums due to the Internal Revenue Service, the costs of prosecution and a special assessment of $50. In addition to these facts, the trial court considered the two prior reprimands the defendant had received from the local grievance committee for engaging in improper communications with parties represented by counsel.

Of course, the defendant's conduct is not to be condoned and surely requires some type of sanction. Their "unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline. . . . Because of this special relationship, [w]e have a continuing duty to make it entirely clear that the standards of conduct . . . of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . . This court will neither neglect nor attempt to avoid that responsibility." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238, 558 A.2d 986 (1989).

Nevertheless, as the plaintiff, the statewide grievance committee, concedes, disciplinary proceedings are instituted *not to punish,* but rather "for the purpose of preserving the courts from the official ministration of persons unfit to practice in them." (Internal quotation marks omitted.) Id.

There are three factors that should be taken into account in this case in determining the nature and extent of the discipline that is needed in order to protect the judiciary and the legal profession from the attorney misconduct. First, of course, is the nature of the attorney misconduct. It is particularly significant in this case that the defendant's misconduct did not involve a client. See *In re Weissman,* 203 Conn. 380, 383, 524 A.2d 1141 (1987) ("[t]he court considered the seriousness of the respondent's misconduct, as well as the relative lack of harm thereby caused to his clients"); *Statewide Grievance Committee* v. *Donnarumma,* Superior Court, judicial district of Waterbury, Docket No. 111253 (8 Conn. L. Rptr. 447, 448, March 4, 1993) ("the court notes that this transgression neither involves a client nor the court"); A.B.A., Standards for Imposing Lawyer Sanctions (1991) p. 5 ("in determining the nature of the ethical duty violated, the standards assume that the most important ethical duties are those obligations which a lawyer owes to *clients*" [emphasis in original]).

It becomes clear that the defendant's three year suspension is excessive when it is compared with the sanctions that have been imposed on attorneys who mishandled their clients' funds—acts of misconduct that involve the attorney-client relationship. In *Statewide Grievance Committee* v. *Van Kirk,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-90-0384679-S (3 Conn. L. Rptr. 789, 792, March 28, 1991), an attorney who had mishandled more than $26,000 worth of one client's funds, had

engaged in dishonest and deceitful behavior regarding another client, and had been reprimanded seven times previously, was suspended for only *one year.* In *Statewide Grievance Committee* v. *Botwick,* Superior Court, judicial district of New Haven, Docket No. 32 23 37 (5 Conn. L. Rptr. 748, December 26, 1991), an attorney was suspended for *one year* after investing roughly $94,000 of a client's funds in his own company and representing to another attorney that the funds, which were intended to pay off a mortgage held by the client, would be held in escrow until the client had signed a release. The court stated that this conduct, which violated rule 8.4 (c) of the Rules of Professional Conduct, "strikes at the very essence of the practice of law and threatens one of the basic tenets of the profession. If one lawyer cannot rely on the written promise of another, we are not a profession of lawyers." Id., 749. The attorney was also reprimanded for "entering into a business transaction with . . . his client" in violation of rule 1.8 of the Rules of Professional Conduct. Id., 748.[1]

The second factor that should be considered in this case is the defendant's professional background. See *Statewide Grievance Committee* v. *Donnarumma,* supra, 8 Conn. L. Rptr. 448. As the majority concedes, the defendant participated in pro bono, charitable and bar association activities, "enjoyed a good reputation in the community and [as a member of] the bar, and . . . appeared to be remorseful for his illegal conduct."

The third factor that should be considered is how the sanction imposed on the attorney compares with the discipline that has been imposed on other attorneys who

---

[1] The respondent in *Statewide Grievance Committee* v. *Botwick,* supra, 5 Conn. L. Rptr. 748, appealed to this court. In *Statewide Grievance Committee* v. *Botwick,* 226 Conn. 299, 311, 627 A.2d 901 (1993), this court reversed the trial court's finding of a rule 8.4 (c) violation because the defendant had not been "fully and fairly apprised of the charge . . . ."

have engaged in similar or more serious misconduct. In the recent case of *Statewide Grievance Committee* v. *Donnarumma,* supra, 8 Conn. L. Rptr. 447, the attorney had pleaded guilty to income tax evasion. The seriousness of his offense is underscored by the federal district court's sentence of imprisonment of seven months and one year supervised release. As pointed out by the trial court, the attorney's transgressions were "aggravated by the circumstances involved in the Waterbury municipal corruption case . . . ." Id., 448. Nevertheless, the trial court suspended him from the practice of law for only *nine and one-half months.* Id. In *In re Weissman,* supra, 203 Conn. 381, the attorney had pleaded guilty to the crime of wilfully failing to *file* a federal income tax return and had been sentenced to one year imprisonment, but execution of the sentence was later suspended and the attorney was placed on probation for two years. This court upheld the attorney's suspension from the practice of law for *one month,* a sanction that is remarkably lenient in light of the fact that the attorney had been suspended from federal practice for one year. Id.; see also *Statewide Grievance Committee* v. *Sablone,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92 506144 (9 C.S.C.R. 256, February 17, 1994) (attorney suspended for *two years* after being convicted of criminal conspiracy and fifty-nine counts of securities fraud); *In re Horton,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 357441 (8 C.S.C.R. 376, March 11, 1993) (attorney effectively suspended for *three years* after conviction of two felony counts of possession of cocaine with *intent to sell*).

Although the trial court has a broad discretion in these matters; *In re Application of Pagano,* 207 Conn. 336, 344, 541 A.2d 104 (1988); its judgment must be reversed if there is a "manifest abuse" of discretion

and "injustice appears to have been done." (Internal quotation marks omitted.) *Grievance Committee* v. *Nevas,* 139 Conn. 660, 666, 96 A.2d 802 (1953). Because I conclude that there has been an abuse of discretion resulting in injustice, I would vacate the three year suspension. During oral argument in this case, even the plaintiff conceded that there was "no precedent for the three year" suspension, and that it was "not the norm" and was "unusual."

In taking corrective action in this case, our inquiry should focus on the fitness of the attorney to practice law. "Character is not measured in the crucible of a single instance and the assessment for reentry appropriately centers on the question of present fitness." *In re Application of Pagano,* supra, 207 Conn. 345. There is nothing in the record to suggest that the defendant is not now fit to practice law. Accordingly, I would reverse the trial court's judgment to the extent that it provides for a three year suspension and remand this case for reconsideration of the sanction to be imposed.

I respectfully dissent.