[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
Pursuant to Section 28B1 of the Connecticut Practice Book, the Statewide Grievance Committee has made presentment to this court that Daniel B. Glass, of Fairfield, Connecticut, has been guilty of misconduct not occurring in the presence of the court, and seeks his suspension from the practice of law.
The proceeding arises from the conviction of the respondent in a federal court on December 29, 1994 after he plead guilty to one count of violating Title 18, United States Code, Section 1014, Making False Statement in Connection with a Loan Application, a felony under federal law. Upon conviction, the respondent was sentenced to three years probation, three months of home confinement, ordered to perform three hundred hours of community service and to make restitution in the amount of $20,000.
This conviction resulted from the respondent's participation as an attorney, in a residential real estate mortgage closing in February, 1989. The closing was part of a scheme to induce a mortgagee bank to lend monies against real estate collateral believed by the bank to be the subject of a bona fide purchase and sale between arm's length buyers and sellers. In fact, the transaction was a refinance of an existing mortgage and no real "sale" took place. Instead, various interwoven documents were prepared, including a contract of sale, a lease back, an option to buy back, and a tri-partite agreement among the "seller", the "buyer" and Swiss Conservative Group ("Swiss"), the entity which apparently arranged and facilitated the closing. A United States Department of Housing and Urban Development Settlement Statement Form HUD-1 was submitted to the bank, certifying that the form was a true and accurate account of the transaction, and that funds had been disbursed in accordance therewith. In fact the form represented that the borrower had paid cash at the closing when the borrower had not; that the borrower had paid settlement CT Page 10224 charges when this was false; that the seller had paid settlement charges in an amount substantially less than what was in fact paid; and that the seller received cash in an amount substantially in excess of what was actually received. The respondent signed this untrue statement, thus committing a criminal act.
The Rules of Professional Conduct, Rule 8.4, provides that it is professional misconduct for a lawyer to "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects". However, the trial court is responsible for evaluating the defendant's character, integrity, and fitness to practice law in order to determine the sanction to impose against him. StatewideGrievance Committee v. Shluger, 230 Conn. 668, 677, ___ A.2d __,_ 1994.
To aid in this task, Connecticut courts have looked to the "Standards for Imposing Lawyer Discipline" ("Standards") adopted by the American Bar Association. Statewide Grievance Committee v.Shluger, supra, 230 Conn. 673 (footnote 10). Statewide GrievanceCommittee v. Hoffman, Judicial District of Stamford/Norwalk at Stamford, No. CV94-0138427, (August 24, 1994, Lewis, J.). Counsel for the petitioner and the respondent both urge the court to consider the standards in determining the sanction to be imposed in this case.
The court is very well aware of the necessity of enforcing our disciplinary rules. I believe that the improvement of the image of the profession in the eyes of the public must be the single most essential goal of the profession. Without the confidence of those who use the legal system, our profession as we know it is in danger. Unless the public believes we are policing ourselves honestly, fairly and with due regard for the interests of those whom we serve, our right to do so will one day be stripped from us.
At the same time, a court charged with imposing sanctions on an errant attorney must always carefully evaluate the facts and the circumstances leading to and surrounding a particular violation. Our task is not "to mete out punishment to an offender, but [so act] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." Statewide GrievanceCT Page 10225Committee v. Botwick, 226 Conn. 299, 307, 627 A.2d 901 (1993) (Citations omitted, internal quotation marks omitted.)
It befalls this court, then, to determine whether the acts or the conduct of the respondent, considering the circumstances under which he committed them, and considering the respondent's character, and fitness to practice law, are sufficient to warrant his suspension therefrom. I think not.
The ABA standards refer to certain aggravating and mitigating factors to be considered by the court in determining sanctions. The relevant aggravating factors include prior disciplinary offense, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, submission of false evidence, false statements or other deceptive practices. Mitigating factors are absence of a prior disciplinary record; absence of dishonest or selfish motives; timely good faith effort to make restitution or to rectify consequences of misconduct, full and free disclosure to disciplinary boards, or cooperative attitudes towards proceedings; inexperience in the practice of law; character or reputation; delay in disciplinary proceedings; imposition of other penalties or sanctions; remorse.
The respondent was admitted to the bar in 1986 having graduated from law school in 1985. His first job as an associate was lost when he failed to pass the bar examination the first time. Having passed on his next try, he gained employment with a second firm, which he subsequently left to take a position with Spirer, Nasser and Marcus, whose partners were personal friends of the respondent's wife. His salary with this firm in 1988 was $26,000 annually.
As a child, the respondent suffered from a learning disability, but through perseverance and athletics, he overcame this impediment and gained self confidence. He enjoyed the love and affection of his family throughout his early trials and their full support now and throughout these proceedings. In furtherance of the fraudulent scheme concocted by Swiss as described earlier in this memorandum, the respondent engaged in a number of closings, and the tainted HUD-1 forms were always prepared by persons other than the respondent. His prior experience in real estate matters was minimal, and he conducted these closings because that is what he was instructed to do. There came a point CT Page 10226 when he confronted his superiors about the propriety of what he was doing and they told him that it was indeed proper. He continued to agonize over the ethical and moral aspects of the transactions, but he never believed he was committing a crime, nor did he have any intention to do so.[1] Indeed, the court cannot ascribe a dishonest or selfish motive to the respondent, who was doing the job he was given.
Once the Swiss scheme was exposed, the respondent cooperated fully with the FBI and with the United States Attorney in his own prosecution, and with the Statewide Grievance Committee. United States District Court Judge Peter Dorsey commented upon this in sentencing the respondent; and upon motion of the United States, granted a downward departure from the sentence guidelines, based on the respondent's substantial assistance to the government. Judge Dorsey commented "in essence, there isn't the usual element of evil or crassness, or ruthless ambition or a materialistic approach to life that has brought you here. . . . It was merely a failure to recognize the fact that a wrong was being done." There was no prior criminal record, as there is no prior disciplinary record. The federal court imposed a sentence of three years probation, three months home confinement, three hundred hours of community service, and restitution of $20,000. Besides these penalties and sanctions, the court is moved to note that the respondent, and his wife and family, have endured the uncertainties of their lives while this cloud of investigation and prosecution hung over them for more than three and a half years. He awaited his sentencing in the District Court for two years and eight months after entering his plea agreement.
In 1990, the respondent left the firm of Spirer, Nasser and Marcus and opened his own practice, being later joined by his wife, also an attorney.
The court is convinced that the respondent feels, and has expressed, unconditional remorse, but these events have been destructive of his life and the lives of his family in an everlasting way. The court is equally confident from the testimony and from the myriad of letters of attestation from family members, friends, clients, business associates and fellow attorneys that Mr. Glass is a man of honesty, integrity and character, and is fit to practice law. The acts of conduct to which he freely admits do not, under all of the facts and circumstances, indicate otherwise. "Although a lawyer is personally answerable to the entire criminal law, a lawyer should CT Page 10227 be professionally answerable only for offenses that include a lack of those characteristics relevant to law practice". Rules of Professional Conduct, Rule 8.4 (comment). The offense, as committed in this case, does not indicate a lack of such characteristics, but rather the evidence suggests that the respondent possesses a wealth of such characteristics.
Upon all of the evidence, I conclude that a suspension of the respondent is inappropriate. Accordingly, pursuant to Practice Book Section 31, Attorney Daniel B. Glass is reprimanded for the conduct for which he was convicted, being the violation of Title 18, United States Code, Section 1014.
So Ordered.
D'ANDREA, J.