[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
This memorandum is issued as a supplement to the undersigned's memorandum of decision in this case dated February 27, 1996, in which the Respondent was suspended from the practice of law for a period of six months.
As noted in the February 27, 1996 memorandum, the Statewide Grievance Committee, pursuant to Section 28B.1 of the Connecticut Practice Book makes presentment to this court that Alan Spirer, an attorney, has been guilty of misconduct not occurring in the presence of the court, and seeks his suspension from the practice of law.
The Respondent, a member of the bar of the State of Connecticut since September 12, 1972 plead guilty to the Felony Offense of Aiding and Abetting Bank Fraud, in violation of Title 18, U.S.C. § 2, 1344(a)(1)(a)(2). He was sentenced to home confinement for twelve months and to probation for three years, ordered to perform four hundred hours of community service, to pay restitution in the amount of $75,000, a fine of $5,000 and the cost of his supervision in the amount of $7,030.80.
The conviction resulted from the Respondent's participation CT Page 2502 as an attorney and member of the firm of Spirer, Nasser and Marcus in real estate transactions on behalf of Swiss Conservative Group ("Swiss"), and in particular a transaction which took place between September and November 16, 1988 involving Swiss, Bruce Russo, Mary Lynn Russo and John Holliday. The transaction was part of a scheme to induce a mortgagee bank to lend monies against real estate collateral believed by the bank to be the subject of a bonafide purchase and sale between arm's length buyers and sellers. In fact, the transaction was a refinance of an existing mortgage and no real "sale" took place. Instead, various interwoven documents were prepared, including a contract of sale, a lease back, an option to buy back, and a tripartite agreement among the "seller", the "buyer" and "Swiss", the entity which apparently arranged and facilitated the closing.
The Respondent, in connection with the scheme, aided and abetted and induced the misrepresentation of the true nature of the transaction, and in closing documents submitted to the bank, the terms of the transaction with respect to the deposit from John Holliday as "borrower", to "seller", the cash from "borrower" as settlement, the cash to "seller" as settlement, the settlement charges paid from "borrower's" funds at settlement, the settlement charges paid from "seller's" funds at settlement, the "borrower's" intent to occupy the property as principal residence, and the "borrower" not having agreed to give, convey, or permit any lien upon the property to secure debt, all of which resulted in the bank accepting a mortgage and giving a $195,000 loan to individuals not qualified to receive such a loan. In aiding and abetting in this misrepresentation the Respondent committed a criminal act. The Rules of Professional Conduct, Rule 8.4, provides that it is professional misconduct for a lawyer to "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." However, the trial court is responsible for evaluating the defendant's character, integrity, and fitness to practice law in order to determine the sanction to impose against him."Statewide Grievance Committee v. Shluger, 230 Conn. 668, 677, ___ A.2d ___ (1994).
To aid in the task of "evaluating the defendant's character, integrity, and fitness to practice law in order to determine the sanction to impose against him"; see Statewide GrievanceCommittee v. Shluger, 230 Conn. 668, 677, ___ A.2d ___ (1994); Connecticut courts have looked to the "Standards for Imposing Lawyer Discipline ("Standard") adopted by the American Bar CT Page 2503 Association. Statewide Grievance Committee v. Shlugar, supra,230 Conn. 673 (footnote 10); Statewide Grievance Committee v.Hoffman, Judicial District of Stamford/Norwalk at Stamford, CV94 0138427, (August 24, 1994, Lewis, J.).
The Respondent became a member of the Connecticut bar in 1972. He subsequently worked for the Department of Environmental Protection as well as with several law firms, being a partner in at least two of those firms before forming the firm of Spirer, Nasser and Marcus in 1986 where he was senior partner. His practice was chiefly in the area of litigation.
Sometime in 1988, his partners presented him with a proposal that the firm represent Swiss in transactions with distressed homeowners, a bank, and friendly "buyers". The firm was to represent all four parties in each transaction. Mr. Spirer testified that after reviewing the documents he said no to the representation, but upon the insistence of his partners, the representation by the firm was undertaken nevertheless. The Respondent testified that he told his partners he did not wish to have anything to do with it.
Unfortunately, the ethical obligation of the partner in a law firm cannot be so easily dismissed.[1] Mr. Spirer had an obligation, as a partner, not simply to discourage the representation, or to disavow it, but rather he was obliged to take affirmative action to see that his firm did not engage in this unethical and criminal conduct.
As stated above, Mr. Spirer reviewed the proposed closing documents after a request from his partners. Besides objecting to the hiring of additional staff necessary to undertake the assignment, he had three other concerns. He thought it poor practice for a homeowner to convey property to a friend or relative, because there was always the risk of a judgment or lien being filed against the guarantee and thus impairing the equity in the property. He also felt the form documents were poorly drafted and needed to be "cleaned up". These two reasons are, of course, the wrong reasons for objecting to the proposal. His third reason was that he was unsure of the ethical issue involved in having the firm represent multiple clients. He consulted the ethical opinions of the Connecticut Bar Association and determined that with appropriate disclosures to the clients, the representation was acceptable. Clearly, however, from a review of the proposed document and from the description to him by his CT Page 2504 partners of the proposed transactions, the Respondent had to know that appropriate disclosures were not to be made; indeed, the whole theory of the scheme was to withhold the true nature of the transaction from the bank[2].
Despite these initial concerns, and his verbal protestations to his partners, Mr. Spirer allowed the representation to go forward without taking any further action to prohibit the unethical and criminal conduct. In his defense, the Respondent cites the mitigating factors contained in the American Bar Association Standards as well as the personal tragedy which befell him during the same time period during which the ethical transgressions took place. Mr. Spirer's wife was suffering from terminal cancer and eventually succumbed to the disease. Mr. Spirer had the personal obligation to care for his wife during her last illness, and to see to the welfare of their young son. He also cites a burgeoning litigation practice which was beginning to overwhelm him.
These facts, of course, has made it substantially more difficult for the court to perform its task, i.e., to determine whether the acts or the conduct of the Respondent, considering the circumstances under which he committed them are sufficient to warrant his suspension from the practice of law. A court charged with imposing sanctions on an errant attorney must always carefully evaluate the facts and the circumstances leading to and surrounding a particular violation. Our task is not "to meet out punishment to an offender, but [so act] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession" Statewide Grievance Committee v. Botwick, 226 Conn. 299,307, 627 A.2d 901 (1993) (Citations omitted, internal quotation marks omitted).
The Respondent committed a felony, thus violating the Rules of Professional Conduct, Rule 8.4(b) and (c). Equally as important he failed in his duty to prevent the criminal unethical conduct of his law firm, for which he had responsibility. Rules of Professional Conduct, Rule 5.1. In addition, his participation in the representation of multiple clients, without proper disclosure, violated Rule 1.7.
A lawyer's duty, as a partner in a law firm, to prevent unethical behavior by other lawyers in the firm, cannot be CT Page 2505 minimized. It is simply not enough to disavow the offending behavior of which he has become aware, or look the other way. If he cannot prevent these practices and the firm refuses to terminate the unethical conduct, his duty is to remove himself from that firm. In this case, neither the mitigating factors of or the ABA Standards, nor the personal tragedies in his life, nor his busy law practice can excuse the Respondent's failure to perform his ethical duties as senior partner. A lawyer must find the time and the strength to see that he is always acting ethically, and if a partner in a law firm, that the firm is so doing as well.
The court concludes that the conduct of the Respondent does bear on his fitness to practice law, and that suspension therefrom is warranted. The Respondent, Alan Spirer, is accordingly suspended from the practice of law for a period of six months commencing on March 15, 1996 and ending on September 15, 1996.
Pursuant to Practice Book Section 46B, the court appoints Attorney Anthony J. DePanfilis to inventory the files of the Respondent and to take such action as seems indicated to protect the interests of the Respondent's clients.
D'ANDREA, J.