[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision Re: Presentment of an Attorney
The plaintiff, the Statewide Grievance Committee, has filed a presentment, pursuant to Practice Book § 28B.I, to determine the extent of the final discipline to be imposed upon the defendant, an attorney admitted to practice in the State of Connecticut, as a result of a conviction for a "serious crime." In July of 1996, upon a plea of guilty, the defendant was found guilty of a violation of 18 U.S.C. § 1957 and (2) for an offense described as "Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity and Aiding and Abetting". Sentence was imposed in the United States District Court, District of Connecticut, by Covello. USDJ, as follow's:
 "The defendant shall be placed on probation for a term of three years. Special conditions include: (1) Defendant shall be in home confinement for a period of six months with electronic monitoring, and he is to pay the cost of electronic monitoring; (2) Defendant shall perform community service for a period of one thousand (sic) through a program approved by the United States Probation Office; and (3) Defendant shall pay a fine of $7500.00 at the rate of $250.00 per month.
 It is further ordered that the Defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. In addition to the special conditions of probation imposed above, it is hereby ordered that the general conditions of probation CT Page 6138 release set out on the reverse side be imposed.
 It is ordered that the defendant pay a Special Assessment of $50.00 for Count One, which shall be due immediately."
The restriction of home confinement allows the defendant to attend work and other needed functions.
By stipulation between the United States Attorney, the defendant, and the defendant's counsel, the conduct which gave rise to the offense to which the defendant pleaded guilty is described as follows:
 "On or about the following dates, the defendant John Bennett deposited funds as set forth below into his account at Union Trust, a financial institution, which funds he knew had been derived from the distribution of cocaine, or was aware of a high probability that the funds had been derived from the distribution of cocaine and consciously avoided confirming that fact.
Date Deposit
 1. October 17, 1990 $6,700 2. October 19, 1990 $8,000 3. November 13, 1990 $9,000 4. November 14, 1990 $9,900 5. November 19, 1990 $9,900 6. November 20, 1990 $8,300 7. November 23, 1990 $5,500"
 A memorandum by the defendant, submitted to Judge Covello, states, in part, as follows:
 "I accept full responsibility for the results of my actions. Because I deliberately closed by eyes to facts that should have been obvious to me, I am guilty of a crime with which I am charged.
 I did not know that the money involved was derived from illegal activity. But I should have known that it was. Looking back on the events, it is embarrassing to state that I did not know or suspect that the money involved was tainted. I am humiliated to admit and face the fact that I acted as I did." CT Page 6139
The defendant notes that the federal sentencing guidelines call for a sentencing range of 41 to 47 months of incarceration and that the sentence actually imposed did not involve incarceration. In this connection, the remarks of Judge Covello, made at the time of sentencing are appropriate:
 "The court further finds that the following extraordinary circumstances of this defendant placed this case outside of the Heartland of the guidelines and mitigates in favor of a downward departure.
 The Court finds first that this was clearly aberrant act. The Court notes that Mr. Bennett has practiced law for over 25 years without any blemish on his record.
 The Court notes further that it has received hundreds of letters from people throughout the defendant's community of a content and a magnitude that I have simply never seen. These letters are from attorneys, government officials, religious leaders, businessmen and friends. Each of these letters attests to the defendant's standing in the community and that his offense was truly out of his character. The number of letters and their sources give the Court genuine concern about the requisite intent of the crime to which the defendant has pleaded guilty, and this intent is clearly nothing more than minimal when compared to the typical Heartland case.
 Three, a typical Heartland case generally involves some significant monetary gain to the defendant. Here the Court notes that the defendant's profit, as it were, from the transaction that was the subject of this offense was limited to normal closing fee for a real estate transaction.
 The Court further notes that transactions leading to this closing were apparently isolated. There is no indication that the defendant had ever before or ever after been involved in similar conduct. The Court concludes that the defendant's conduct was not a premeditated act. The defendant's conduct resulted from a request of a client to do a residential home closing. While the conduct was technically illegal and the defendant, a professional uniquely qualified who appreciated it illegality, the Court does not find the level of intention to be the same as that CT Page 6140 of a typical Heartland case.
 Further, the record may reflect that the underlying offense occurred at a time when the defendant was distracted by a very serious family illness.
 And finally, the Court will simply note that this gentleman's long history to the community, both within and without the practice of law attested to by the letters received by the Court, and for all those reasons the record may reflect that the Court concludes that an 11 level downward departure is appropriate."
When the court disciplines an attorney, it does not do so to mete out punishment to the offender but does so in order that the administration of justice may be safeguarded so that court and the public may be protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. Thus, the "protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing is of paramount importance in attorney disciplinary matters." Statewide Grievance Committee v. Shluger,230 Conn. 668, 675, 681 (1994).
The plaintiff urges the court to impose discipline in the form of suspension of the defendant for a period of three years, that is, coterminous with the period of probation imposed as a sentence in the federal court. The defendant, on the other hand, urges the court to impose discipline in the form of a reprimand without suspension from practice.
The American Bar Association Standards for Imposing Lawyer's Sanctions, while not adopted by the judges of the State of Connecticut, have been utilized to assist in determining what sanction to impose. See Statewide Grievance Committee v. Shluger,
supra at 673. n. 10. Under the standards, after misconduct has been established, aggravating and mitigating circumstances may be considered. Aggravating circumstances include (A) prior disciplinary offenses; (B) dishonest or selfish motive; (C) pattern of misconduct; (D) multiple offenses, (E) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency; (F) submission of false evidence, false statements or other deceptive practices during the disciplinary process. The CT Page 6141 court does not find that, on the facts presented to it, that there are any aggravating factors to justify an increase in the degree of discipline to be imposed. While the deposits made by the defendant extended over a period of weeks, the court regards that conduct as a single transaction, and not a multiple offense, at least for the purpose of the present proceedings. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed including (A) a prior disciplinary record; (B) absence of a dishonest or selfish motive; (C) personal or emotional problems; (D) timely, good faith effort to make restitution or to rectify the consequences of misconduct; (E) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (F) inexperience in the practice of law; (G) character reputation; . . . (J) interim rehabilitation in disciplinary proceedings; (K) imposition of other penalties or sanctions; (L) remorse; and (M) remoteness of prior offenses. The defendant points out, and the court agrees, that many of the mitigating factors apply to the defendant. Thus, the defendant notes that there are no prior disciplinary record against the defendant; that there is a complete absence of dishonest or selfish motive, that the defendant is an individual of outstanding character and held in universally high regard by the Bar, Bench and his clients, and the remorse of the defendant is clearly evident. The defendant also urges the court to consider that the defendant was inexperienced in the cash-reporting requirements. However, the conduct giving rise to the offense involves more than a simple failure to file a form.
The court is impressed with not only the number but the content of the many letters submitted to Judge Covello for his consideration in determining the appropriate sentence to be imposed upon the defendant in the criminal proceedings. Those letters clearly establish the defendant is a religious man who is devoted to his family, to his friends and to his clients. Some of the individuals who wrote letters of behalf of the defendant clearly indicated that they are better persons by virtue of their contact with the defendant.
At the time the present proceedings were presented to this court, there was standing room only in the courtroom with many individuals, most of whom were members of the Bar of this state, who came to court to testify and to show their support for the defendant. The court was also impressed with the sincerity of the numerous witnesses who testified before this court as to the true CT Page 6142 affection that they had for the defendant and his fitness to practice law. Indeed, a number of the witnesses testified that suspension was not necessary in the present case and that the community would actually be injured if the defendant were suspended from the practice of law.
The court, however, cannot overlook the conduct giving rise to the criminal offense to which the defendant pleaded guilty nor can the court overlook the contents of the medical report submitted to Judge Covello on behalf of the defendant indicating an aversion to matters involving details and a difficulty in anticipating the consequences of his actions. The court therefore believes it to be appropriate, under the standards hereinbefore set forth, that the defendant be suspended from practice for a period of three months.
Under Practice Book § 46B, the court will appoint an attorney to protect the interests of the defendant's clients during the period of suspension. Accordingly, the foregoing is not a final judgment and the attorney for the defendant is requested to submit to the court, within two weeks, recommendations for such an appointment. Thereafter, the court will appoint an attorney pursuant to § 46B and will set forth the specific dates of suspension from practice.
Rush, J.