[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioning committee seeks to have this court impose discipline on the respondent, already placed on interim suspension, as the result of a federal conviction on a charge of false statements in obtaining a loan. The basic facts surrounding that conviction are not in material dispute and will be outlined briefly here:
The respondent entered a plea of guilty to a one count information charging false statements to a federally insured bank in violation of 18 U.S.C. § 1014. The charge arose out of admittedly false financial statements filed by the respondent to help procure loans on behalf of a client in 1989. Losses to the banks resulting from the respondent's false statements amount to just over four hundred thousand dollars. The respondent was not prosecuted until 1997. He promptly entered a plea of guilty to the information, and, in a downward departure from be sentencing guidelines, Judge Squatrito sentenced him to twenty-four hours incarceration and three years of supervised release with a number of conditions including community service and restitution. That sentence was imposed on September 3, 1997.
As a result of his conviction, the respondent was suspended by Judge Covello from the practice of law in the United States District Court for period of thirty-six months, "a time period equivalent to his current term of supervised release." The respondent duly notified the statewide grievance committee of his suspension from federal practice, and that committee initiated the present proceedings.
On November 6, 1997, the undersigned placed the respondent on interim suspension, effective December 15, 1997, "until further order of the Court." The Petitioner now seeks to have the court enter a final disposition of this matter and recommends no less than a suspension that is coextensive with the respondent's CT Page 2974 probation, which is due to expire on September 3, 2000. The respondent argues that, based on the nature and age of the offense, his lack of prior disciplinary actions, his outstanding military record[1], and his more than satisfactory compliance with the terms of his probation, his suspension should end now, or at least as soon as he is able to take and pass the legal ethics portion of the multistate bar examination.
The petitioner points out that an offense such as that committed by the respondent normally justifies disbarment. The American Bar Association Standards, at § 5.11, state that "[d]isbarment is generally appropriate when: (a) a lawyer engages in a serious criminal conduct a necessary element of which includes . . , fraud . . , or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Section 5.12 suggests that the penalty of suspension is warranted for that conduct which is not covered by § 5.11. Thus, trial courts retain a fair amount of discretion to arrive at a lesser penalty if authorized by the Practice Book rules; see Statewide Grievance Committee v. Spirer,247 Conn. 762, 778-80 (1999).
The Petitioner has asked this court to order a suspension which, at a minimum, runs concurrently with the criminal sentence and suspension from practice in the District Court. . See, In reApplication of Dortch, Md. Ct. App., Misc. No. 16 1/6/97; In theMatter of Eugene I. Micci, 225 App.Div.2d 888, 639 N.Y.S.2d 642
(1996); In the Matter of Michael G. Marinangeli, 211 App.Div.2d 272,628 N.Y.S.2d 79 (1995); In the Matter of John S. Ament, 38 Tex. Sup. Ct. J. 151, 890 S.W.2d 39 (1994); In re Culpepper,770 F. Sup. 366 (E.D. Mich. 1991); In re Disciplinary Proceeding v.Walgren 708 P.2d 380 (Wash. 1985); Matter of Griffin 101 N.M. 1,677 P.2d 614 (1983); The Florida Bar Petition of Pahules,382 So.2d 650 (Fla. 1980).
This case is similar to Statewide Grievance Committee v.Hochberg, Docket No. CV97-0575688S (Hartford Judicial District, July 12, 1999) in which Judge Berger concurred with those courts that have held that a suspension for the period of parole or probation is an appropriate sanction. That case, like this one, also involved a federal fraud conviction based on an event that had occurred many years earlier, in this case in 1988, although in Hochberg. the respondent had been already been disbarred by the State of Massachusetts. Hochberg had also received a CT Page 2975 suspended sentence with three years of supervised release as the sentence in his criminal case.
Judge Berger reasoned that the fact that the execution of the three year sentence was suspended did not expunge the sentence, which was simply served under the conditions and terms of probation rather than within a prison. He concluded that "reinstatement, or termination of the interim suspension, while an attorney is serving his sentence" would be "imprudent". Id. He cited In re Culpepper supra, in which the court was faced with a somewhat similar situation. "[A]lthough the Court was impressed with Mr. Culpepper's testimony and sincerity concerning his contrition and rehabilitation, as well as the testimony of other witnesses at the hearing regarding his competence and learning in the law, the Court finds that his resumption to the practice of law before this Court before he has completed his term of parole on the sentence of incarceration on Counts 3 and 4 would be detrimental to the integrity and standing of the Federal Bar." Id., 373-74. That court further added," [a]t a time such as the present when the ethics and practices of the legal profession are under intense public scrutiny and criticism, it seems to this court inappropriate to reinstate to the practice of law an attorney who is still serving a sentence of incarceration imposed by this court. . . . In this Court's view, it would be a disservice to the public, to the practicing bar and this Bench to effectively say that, although a person is legally disabled, by virtue of his criminal conviction status, from serving as a juror, it is acceptable for him to serve as an officer of this court." Id., 374.
"An attorney, as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. In re Peck, 88 Conn. 447, 450, 91 A. 274
(1914). Therefore, [if] a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from misconduct or unfitness of those who CT Page 2976 are licensed to perform the important functions of the legal profession. Statewide Grievance Committee v. Botwick,226 Conn. 299, 307, 627 A.2d 901 (1993)." (Internal quotation marks omitted.) Massameno v. Statewide Grievance Committee,234 Conn. 539, 554-55, 663 A.2d 317 (1995), citing Statewide GrievanceCommittee v. Shluger, 230 Conn. 668, 674-75, 646 A.2d 781 (1994).
"The most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and abide by the law; public confidence in the integrity of the officers of the court is undermined when lawyers engage in illegal conduct." Standards, § 5. Such confidence would be undermined by attorneys practicing law while still serving their sentences.
Although agreeing in principle with such pronouncements, this court is disturbed that the one remaining impediment to the respondent's reinstatement is the somewhat serendipitous fact that the respondent is still on probation for a single series of events that occurred some eleven years ago. Given his lack of any other disciplinary actions, the references provided for him by distinguished members of the Bar of this state, his stellar military record, his willing compliance with the terms of his probation, exceeding, even, the pace at which his community service was to be performed, and the court's sense that it is highly unlikely that he would violate our rules of conduct in the future, there is little doubt that but for the existing federal supervised release, this court would be prepared to terminate the suspension of the respondent's license to practice immediately.
Yet, if it is maintaining the virtue and dignity of the profession that is the primary goal of the imposition of discipline in such cases, it is hard to argue convincingly with the reasoning of Judge Berger and others who conclude that the stature of the bar as a whole is harmed when any of its practicing members are still serving sentences for criminal convictions. If the federal courts were to reduce the period of the respondent's supervised release, this court would be pleased to restore his license to practice at once. Until and unless that event occurs, however, this court feels constrained to follow the reasoning of Hochberg, supra, and to suspend the respondent's license to practice law in this state until September 3, 2000. The respondent's reinstatement shall be conditioned upon his successful passage of the ethics portion of the Multistate Bar CT Page 2977 Examination, or in the event that he cannot arrange to take this examination so that it may be graded before September, the successful completion of a comparable Continuing Legal Education Course on Legal Ethics.
Jonathan E. Silbert, Judge.