[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, the Statewide Grievance Committee, filed a presentment in accordance with Practice Book § 31(a), charging attorney misconduct against the respondent, Attorney John Timbers, who was admitted to the bar of this state in 1981. The presentment is in three counts.
The first count alleges that the defendant failed to pay the attorney's occupational tax for several years and that, as of the end of December, 1993, the balance due was $3,960. The plaintiff contends that the failure to make timely payment of this tax constitutes a violation of rule 8.4(d) of the Rules of Professional Conduct, which prohibits conduct prejudicial to the administration of justice.[1]
The second count of the presentment filed by the Statewide Grievance Committee refers to the defendant's representation of Abraham Offner in an arbitration proceeding against a stock broker. Offner was awarded $15,000, and he agreed that the defendant could retain $250 in escrow in order to cover the defendant's out-of-pocket disbursements. The plaintiff further alleges that, although Offner attempted to obtain an accounting from the defendant regarding the status of this escrow money for over a year and a half, he did not receive such an accounting until he filed a grievance. The plaintiff claims that this conduct violates rules 1.3, 1.4(a) and 1.15(b) of the Rules of Professional Conduct. These rules prohibit a lawyer from failing to communicate promptly with his client.[2]
The third count of the presentment relates to a case in which the defendant engaged the services of a court reporter, Michael C. Schreff, to take a deposition. Schreff sent the defendant a bill for $367.88 in May, 1992, which the defendant did not pay until October, 1993, after Schreff had filed a grievance. The plaintiff further alleges in this count that the defendant had told Schreff that his clients, the Sragers, had sent him money earmarked for Schreff, but that he, the defendant, had decided to use these funds for other purposes in connection with the same litigation. CT Page 6947
The plaintiff also contends in this count of the presentment that, in connection with its investigation of the grievance filed by Schreff, it issued three subpoenas to the defendant to produce his financial records relating to funds he had received from the Sragers and disbursed. The plaintiff alleges that the defendant did not keep a proper record of his clients' escrow funds or comply with the subpoenas that the plaintiff issued, but arrived at the hearing with a "newly created" document which was not adequately responsive to the subpoenas. The defendant is charged in this count with violating rules 1.15(a) and (b) and 8.1 of the Rules of Professional Conduct, and Practice Book § 27A.[3]
The plaintiff seeks in this proceeding to have the Superior Court impose "whatever discipline the Court deems appropriate," and in its brief recommends a suspension for one year. This court conducted a hearing on the presentment at which the defendant, appearing pro se, and Messrs. Offner and Schreff testified.
The testimony and exhibits submitted at the hearing indicate that the factual allegations contained in the presentment filed against the defendant are essentially accurate. The defendant did not make timely payment of the attorney's occupational tax over the course of some seven or eight years, and the ultimate balance due as of the end of December, 1993 was $3,960. The defendant did not make a prompt response to Offner concerning the money being held in escrow. The defendant did not make a timely payment of court reporter Schreff's bill out of his client's funds. The defendant did not make a timely disclosure to the plaintiff of the information it sought concerning money which the defendant was holding for his clients, including to whom this money was disbursed.[4]
The defendant contends that the admitted failure to make timely payment of the attorney's occupational tax does not constitute conduct prejudicial to the administration of justice, but rather concerns the taxing authorities of the executive branch. The defendant further argues that he ultimately paid the tax in full in November, 1995, including interest and penalties.
Regarding Offner's grievance, the defendant states that, when he finally did calculate his out-of-pocket expenses, they totalled substantially more than the $250 under discussion, and that, in any event, the delay in accounting does not constitute CT Page 6948 attorney misconduct.
In connection with the Schreff grievance, the defendant claims that his clients, the Sragers, never specifically earmarked any funds for the court reporter, and that he had the discretion to disburse his client's funds so long as they were spent in connection with the litigation involving his clients. The defendant also contends that, at the grievance hearing, he furnished the plaintiff with information concerning his clients' funds and the disbursements from those funds that was more comprehensive and responsive than the information sought by the plaintiff. The defendant also argues that the plaintiff's subpoenas were "poorly drafted" and "ambiguous."
In analyzing this presentment, the court is guided by the principles outlined in Statewide Grievance Committee v. Botwick,226 Conn. 299, 307, 627 A.2d 901 (1993), to the effect that our task is not "to mete out punishment to an offender, but [to act so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks omitted). "[O]f paramount importance in attorney discipline matters is `the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing.'" StatewideGrievance Committee v. Shluger, 230 Conn. 668, 681, 646 A.2d 781
(1994), quoting Grievance Committee v. Broder, 112 Conn. 263,265, 152 A. 292 (1930).
Statewide Grievance Committee v. Shluger, supra, 230 Conn. 677, summarized this court's obligation as follows: "the trial court [is] responsible for evaluating the defendant's character, integrity and fitness to practice law in order to determine the sanction to impose against him." In this regard, Shluger, supra, 676, also points out that General Statutes § 51-94 provides that in a presentment proceeding, "evidence tending to show the general character, reputation and professional standing of such attorney shall be admissible."
In terms of the standard of proof, the Supreme Court in Weissv. Statewide Grievance Committee, 227 Conn. 802, 812,633 A.2d 282 (1993), stated that "in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the Code of Professional Responsibility is clear and CT Page 6949 convincing evidence . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Citations omitted.)
As to the first count of the presentment, while an attorney's repeated failure to pay the occupational tax could be regarded as constituting "conduct prejudicial to the administration of justice," in this present case the plaintiff failed to prove by clear and convincing evidence that the defendant's conduct was willful or that he had sufficient funds to pay such tax at any one point.
As to the second count of the presentment, the plaintiff has proved by the proper standard of proof that the defendant violated Rule 1.15(b) by failing to provide Mr. Offner with a prompt accounting of the money in escrow, despite repeated requests by Mr. Offner. The defendant in his brief agrees that his client telephoned him about the escrowed funds and that "[s]everal times [the defendant] said he would do the calculation, but did not get around to it."
As to the plaintiff's allegations in the third count of the presentment, relating to disbursements to court reporter Schreff, the plaintiff has not proved by clear and convincing evidence that the defendant violated rules 1.15(a) and (b) of the Rules of Professional Conduct and Practice Book § 27A. The reporter testified that the defendant told him over the telephone that the Sragers had specifically earmarked funds for the reporter, but the defendant denied making this statement and testified that he was authorized by the Sragers to use his discretion in making payments. The best witness on this subject would have been the Sragers, who presumably could have said whether they had sent the defendant a specific sum to be used only to pay the court reporter. In the absence of such testimony, the plaintiff's evidence fell short of the requisite level of proof.
The third count of the presentment also charges the defendant with failing to cooperate with the plaintiff's investigation of the Schreff grievance by refusing to respond to subpoenas seeking his bank records and other financial statements. The plaintiff wanted to know what money the defendant had received from the Sragers, and the defendant did not provide a prompt response. When the defendant finally produced some documentation, it was not a "record" of his client's funds, but rather a list of disbursements admittedly created the night before the hearing. In CT Page 6950 addition, the defendant concedes in his brief that the information he finally did produce "wasn't complete." The allegation of a violation of Rule 8.1(b) has been proved by clear and convincing evidence.
Having determined that two instances of misconduct have been demonstrated, the next issue is the imposition of an appropriate sanction. Statewide Grievance Committee v. Shluger, supra,230 Conn. 673 n. 10, noted that the trial court, in deciding the proper sanction to impose, had considered the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards). These Standards speak in terms of "aggravating" and "mitigating" factors, and constitute a useful guide to the imposition of a sanction. Aggravating factors set forth in the Standards include: "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process." Statewide Grievance Committee v.Shluger, supra, 673 n. 10.
Mitigating factors include: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary boards or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation . . . (j) interim rehabilitation in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses." Id.
An "aggravating" factor in the present case is a pattern of misconduct on the part of the defendant, which misconduct occurred within a relatively short period of time. As the Supreme Court noted in Shluger, repeated violations "constitut[e] a pattern of misconduct for which simply another reprimand would not have been sufficient." Id., 680. Another "aggravating" factor is the defendant's obstruction of the plaintiff's investigation of the Schreff grievance by failing to promptly cooperate in the furnishing of the precise financial information requested by the plaintiff. CT Page 6951
With respect to "mitigating factors," since the defendant does not stand accused of committing any crime or attempting to steal his client's money, there is no charge of a dishonest or selfish motive. On the other hand, a number of mitigating factors are not present in this case. First, "a prior disciplinary record exists." In 1990, the defendant sent a letter to Judge Wendy Susco, for which the plaintiff reprimanded the defendant in March, 1991, determining that he had violated rule 3.5 of the Rules of Professional Conduct, relating to ex parte contacts. The defendant was also reprimanded in August, 1991, for violating rules 1.1, 1.2, 1.3 and 1.4, relating to the client-lawyer relationship. Secondly, the defendant did not make a timely effort to cooperate with the plaintiff's investigation, nor did he voluntarily makes a full and free disclosure. Thirdly, the defendant is certainly not inexperienced, as his background includes clerking for a federal judge and working for a United States Attorney's office as well as for a large, prestigious New York City law firm. Fifth, the defendant did not exhibit any "remorse" as such, but rather argued that his conduct did not violate the Rules of Professional Conduct.[5]
The defendant attempts to excuse his conduct on the ground that he is a sole practitioner who handles large, complicated commercial litigation. He claims that, when these cases get close to trial or are on trial, they require 100 percent of his attention and, under those circumstances, he often is obliged to neglect other matters because he is "stretched thin for time." This is not one of the mitigating factors mentioned in the ABA Standards. It is noted that the defendant made the same excuse that "because he is a sole practitioner, it is difficult for him to comply with the rules of practice with respect to deadlines and copy requirements" in Srager v. Koenig, 42 Conn. App. 617,622, 681, A.2d 323 (1996). It is further noted that, in Srager,
the Appellate Court rejected such a defense. Id.
Based on the ABA Standards, as well as the court's own judgment, the defendant should not be suspended for an entire year, as his conduct does not warrant such a penalty. Nevertheless, the defendant should be suspended for some period of time because of the seriousness of his misconduct.
In his dissent in Shluger, supra, 230 Conn. 683-85, Justice Berdon identified three factors that should determine the severity of the sanction. The first is the nature of the misconduct, including whether the conduct "involve[d] a client." CT Page 6952 Id., 683. The grievance filed by Offner regarding the funds in escrow clearly meets this standard. The second factor is the "defendant's professional background." The parties did not offer any direct evidence on this subject at the hearing other than copies of two reprimands, but two recent cases have been noted in this regard. See CFM of Connecticut, Inc. v. Chowdhury, 239 Conn. 375,402, ___ A.2d ___ (1996) ("a sanctions order against an attorney for misconduct in conducting litigation implicates his professional reputation.") (Internal quotation marks omitted.);Srager v. Koenig, supra, 42 Conn. App. 623 ("[t]here is a recurring pattern of abuse of the judicial process exhibited by Timbers"). The third factor is a comparison with sanctions imposed on other attorneys for similar conduct, and neither party offered any evidence on this subject.
In considering the defendant's character and fitness to practice law, a reprimand will not suffice to protect the public and the administration of justice. Accordingly, pursuant to Practice Book § 31(a), Attorney Timbers is suspended from the practice of law for one month, from February 1, 1997, to and including February 28, 1997. In accordance with Practice Book § 46B, Attorney Robert A. Skovgaard, 1234 Summer Street, Stamford, is appointed to protect the interests of the defendant's clients during the period of suspension.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of December, 1996.
William B. Lewis, Judge